(Nos. 3524 and 3525—Consolidated)

LOUISE M. BERG, No. 3524, CHARLES F. BERG, No. 3525, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 11, 1941.*

*Rehearing denied March 11, 1942.*

*Supplemental Opinion filed March 11, 1942.*

BELL, FARRAR & SCOTT and CARL I. DIETZ, for claimants.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Each of above claimants sustained injuries which arose out of the same transaction or occurrence; each is represented by the same counsel; the complaint in each case is the same except as to the nature of the injuries sustained and the damages claimed as the result thereof; the questions involved are the same; and we have therefore combined the cases for the purposes of consideration and disposition.

Each complaint avers in substance that for the past thirteen years the respondent has owned and controlled a tract of land in Rock Island County consisting of approximately two hundred acres adjoining the Rock River, known as Blackhawk State Park, which tract of land came under the supervision and control of the respondent by virtue of an Act of the Fifty-fifth General Assembly entitled "An Act Providing for the Purchase of the Blackhawk Watch Tower Site to be Used for a State Park and Making an Appropriation Therefor," approved June 29th, 1927; that since the establishment thereof, said park has been under the direction and supervision of the Division of Parks and Memorials of the Department of Public Works and Buildings of the respondent, and has been in charge of a park custodian as the agent of such division and department; that shortly prior to July 4th, 1938, a voluntary association of persons known as The Italian-American Club secured permission of the respondent's agent in charge of said park, and the consent of the Superintendent of the Division of Parks and Memorials of said Department of Public Works and Buildings, for the holding of a picnic and celebration in said park on July 4, 1938, and said club proceeded to advertise to the public that it would sponsor a picnic and patriotic celebration at said park, which celebration would be featured by certain political speeches, to be followed by a display of fireworks in the evening; that said

club proceeded with the arrangement for said picnic and cele-
bration; that the custodian of said park actively assisted in
making such arrangements, and was personally present and
co-operated with the committee in perfecting all details re-
lating to the celebration that required the regulation and
supervision of the respondent through its park custodian;
that said club procured a large supply of fireworks and ex-
plosives, and with the knowledge, consent and co-operation of
the park custodian, held said celebration as advertised; that
the respondent through its park custodian or other agents,
had placards and signs posted throughout the park during
said day reading ''No Fireworks Allowed''; that on the eve-
ning of said day there were approximately eight thousand
(8,000) persons, including the claimants, present in said park;
that prior to the time said grounds became a State park it
had become customary for such fireworks as were displayed
in the park to be fired and discharged outside of the bounda-
ries of the park, from the north edge of Vandruff's Island in
Rock River; that notwithstanding such well-known custom,
the park custodian and the members of the club committee
selected a place within the park for the shooting and dis-
charging of said fireworks; that said park custodian and each
member of the committee well knew, or ought to have known,
that the place so selected for the discharge of said fireworks,
and the areas set aside for the use of spectators and general
public, were in such close proximity to each other that serious
injury to members of the public there assembled would or
might result from the bursting of rockets and other fireworks
if the same were unskillfully or accidentally discharged; that
such park custodian and the respondent failed and neglected
to have a sufficient number of police or employees to protect
the spectators invited to the park on said occasion from
severe bodily injury and harm; that in discharging such fire-
works, a spark in some manner reached and ignited certain
supplies of fireworks placed carelessly nearby in open and
unprotected boxes, causing such stored fireworks to be pre-
maturely ignited and discharged, which resulted in the wild
and uncontrolled explosion thereof in many directions, where-
by each of the claimants was struck and knocked to the
ground and seriously burned and thereby suffered serious and
permanent injuries; that each of the claimants was in the
exercise of all due care and caution and that the accident in

question was the result of the carelessness and negligence on the part of the custodian of said park and of the respondent.

The Attorney General has filed a motion to dismiss in each case for the reason that each of said claims is predicated upon the alleged liability of the respondent for the negligent and wrongful acts of its officers, agents and employees while engaged in a governmental function, and that under such circumstances there is no liability on the part of the respondent.

The question here involved has been before the courts of this State on many occasions, and cannot now be considered an open question.

In the case of *Stein* vs. *West Chicago Park Commissioners,* 247 Ill. App. 479, the plaintiff's decedent was an infant of the age of ten years who was drowned by falling through the ice on a lagoon or pond in Douglas Park in Chicago, which was used for boating and swimming in the summer and for skating in the winter season.

The court held that the defendant was a municipal corporation organized for the health, welfare and enjoyment of the general public and was not liable for the negligence of its servants and agents under the doctrine of respondeat superior.

In the case of *Hendricks* vs. *Urbana Park District,* 265 Ill. App. 102, the plaintiff's intestate was an infant of the age of twelve years who was drowned in a swimming pool in a park maintained by the defendant. The declaration alleged that the defendant did not take precautionary measures to protect those using the swimming pool but managed and operated the same in a careless and negligent manner; that the pool was improperly constructed and was in a dangerous and unsafe condition; that it was without sufficient lights; that the defendant did not furnish sufficient guards and failed to erect notices as to the depth of the water; that there was not sufficient lookout for the protection of swimmers, and that pools of that kind were of a nature that would appeal to and were attractive to children of tender years.

The defendant demurred to the declaration and the court, after considering the previous cases in this State, held that the doctrine of respondeat superior had no application and that the defendant was not liable for the negligent acts of its officers as charged in the declaration.

In the case of *Love* vs. *Glencoe Park District,* 270 Ill. App. 117, the declaration charged that the defendant carelessly and negligently permitted the plaintiff's intestate to swim in Lake Michigan at a beach controlled by the defendant, without warning him of a dangerous undertow which was in existence at that time; that the lifeguards maintained at the place in question negligently and carelessly failed to perform their duty; and that the defendant failed to have life preservers and safety ropes for use during the emergency, whereby the plaintiff's intestate was drowned.

The defendant demurred to the declaration, and the court, after reviewing a number of cases in this State involving similar questions, held that the doctrine of respondeat superior did not apply and that there was no liability on the part of the defendant. In considering the case the court, among other things, said:

"It is also argued that the present rule is based upon the ancient doctrine that 'the king can do no wrong.' We believe the rule is based upon a broader and more humane theory of government. The purpose of the State in the creation of park districts is primarily to provide for the health, welfare and entertainment of the public. The State could operate without such agencies, but without them the loss would be that of the public. They are not necessary to carry on the functions of government, but their existence is of inestimable benefit to the people. Accidents must, necessarily, happen because of their operation, but the great good to the greatest number greatly out-weighs the hardships to the few. The health benefit derived by the general public is of first consideration, and it was evidently this fact which influenced legislatures in the creation of park districts similar to the one involved in this proceeding."

In the case of *Gebhardt* vs. *Village of LaGrange Park,* 354 Ill. 234, the defendant maintained a playground and recreation center beyond the corporate limits of the village. Such playground contained a swimming pool and the defendant arranged to convey children in the village truck to and from such swimming pool. In returning from the pool on the occasion in question, the automobile in which the plaintiff was riding collided with another car, whereby the plaintiff was injured. The court held that the maintenance of the swimming pool was a governmental function, that the doctrine of respondeat superior had no application, and that the village was not liable for damages arising out of the negligence of its servants in the exercise of such governmental function.

In the case of *LePitre* vs. *Chicago Park District,* 374 Ill. 184, the plaintiff sued to recover damages for personal in-

juries received when the automobile in which she was riding crashed into a concrete structure on the drive known as The Outer Drive which was under the governmental jurisdiction of the defendant park district. The plaintiff's action was founded upon the alleged negligence of the defendant in locating and maintaining such concrete structures on the drive and in not having them properly lighted. The court held that the defendant in the construction of the Outer Drive was engaged in a governmental function and therefore was not liable for the negligence of its servants and agents in that behalf.

In the case of *Trombello* vs. *State*, 8 C. C. R. 56, plaintiff's intestate was a minor of the age of six years who was drowned while playing on a raft in a park lagoon in Douglas Park in Chicago.

In the case of *Metropolitan Trust Company, a Corporation, et al.*, vs. *State*, 8 C. C. R. 377, the plaintiff's intestate was an infant of the age of thirteen years, who was drowned while swimming in a swimming pool in Ogden Park in Chicago. In that case it was charged that the defendant failed to place and maintain a screen over a certain water outlet pipe, which pipe was ten inches in diameter, and that by reason thereof the plaintiff's intestate was caught by the suction and drawn into such outlet pipe, was unable to extricate herself and was drowned before the flow of water from such outlet pipe could be shut off.

In the case of *Monaco, et al.* vs. *State*, 9 C. C. R. 90, the plaintiff's intestate, an infant of the age of twelve years, was drowned while skating upon a lagoon in Columbus Park in Chicago. The complaint alleged it was the duty of the respondent to take all precautionary measures required by reasonable prudence to guard against dangers which might arise because of insufficient thickness of the ice, and to warn the public against such danger by proper signs, and that it failed in its duty in that behalf.

In the case of *Jones* vs. *State*, 10 C. C. R. 104, while claimant was walking in Lincoln Park in Chicago her foot was caught or entangled by a wire extending from a certain tree to a stake, whereby she fell and received permanent injuries.

In the case of *Nina Youngman, Admx. etc.* vs. *State*, No. 3262, decided at the January term, A. D. 1940 of this court, two infants aged ten and twelve years respectively, were

drowned in Pike Creek at White Pines State Park, Oregon, Illinois, said park being established and operated by the State of Illinois. In that case the complaint alleged that there was a concrete slab across Pine Creek which was formerly used by cars, but was no longer so used; that the waters of the creek passed over it in a shallow manner and that the surface of the slab had become overgrown with moss and was attractive to children of tender years who were in the habit of wading on the slab; that the water on each side of the slab was approximately fifteen feet in depth, making it a dangerous place for children to play; that the respondent negligently and carelessly failed to remove the slab or provide protection for the same and permitted children to play thereby and thereon, as a result of which the two children, while wading on the slab, slipped off and were drowned.

Each and all of the above cases were park district cases, and in each of such cases an award was denied upon the ground that the defendant in the maintenance of its public parks was engaged in a governmental function and therefore was not liable under the doctrine of respondeat superior. The same conclusion has been reached in numerous other cases decided by this court.

The law as set down in the cases cited is decisive of the question involved in the cases at bar, and award in each case must therefore be denied.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

ECKERT, J.

Claimants have filed herein their petition for rehearing which raises the question of the extent of the jurisdiction of this court. Claimants contend that the court erred in applying to these claims the general rule of law that the doctrine of *respondeat superior* has no application to the State of Illinois in the exercise of its governmental functions. It is urged that the application of this rule to all cases where the State is in the exercise of such governmental functions is extremely harsh, inhuman and unjust, although it is admitted that it is the rule followed by courts of record in this State.

It is urged that the Court of Claims has heretofore recognized an exception to this general rule and held the State liable in cases where the following conditions existed:

(1) Such gross carelessness or wanton negligence on the part of an officer, agent or employee of the State as amounted to culpable negligence.

(2) Freedom from contributary negligence on the part of the claimant.

(3) Proof of severe or serious personal injury to claimant resulting in death or total or partial or permanent disability directly attributable to the culpable negligence of said officer, agent or employee.

It is urged that such exception is a recognition of a broad obligation and liability upon the part of the State for the advancement of social justice and the rehabilitation of its citizens in cases where injury or damage arises from culpable negligence of State officials or employees. Claimants contend that paragraph 4 of Section 6 of the Court of Claims Act does not restrict or limit this court to making an award only in cases where there is a pre-existing legal or equitable obligation on the part of the State, but rather that said paragraph 4 of Section 6 of the Court of Claims Act expressly gives this court jurisdiction to hear and determine tort claims against the State, and that said paragraph grants broad powers to the court to exercise the same authority as the Legislature itself could exercise in considering and passing upon such claims.

This court, however, has many times considered similar contentions as to its jurisdiction and power to make awards. Under the Act of 1877, which created a Commission of Claims, composed of one Judge of the Supreme Court and two Circuit Judges of the State, an award was denied where there was neither an equitable nor legal claim against the State. *Schmidt* vs. *State,* 1 C. C. R. 76. Upon the creation of the original Court of Claims, in 1903, the holding in the Schmidt case was approved. *Henke* vs. *State,* 2 C. C. R. 11. In the case of *Ryan* vs. *State,* 4 C. C. R. 57, decided under the Act of 1917, the court stated that the Act "does not authorize this court to allow any claims which are not based on principles of law and equity, however much such cases might appeal to the sympathies of the court. . . ."

Subsequent to the opinion in the Ryan case, a number of decisions, influenced, apparently, by the sympathy of the court, departed from the rule laid down in the earlier cases, and allowed certain claims in which there was no legal lia-

bility. The grounds of these decisions were characterized, first, as social justice, then as social justice and equity, and afterward as equity and good conscience. It was at this time that the alleged exception to the general rule of *respondeat superior* appeared in the opinions. Claimants cite: *Kayhs* vs. *State,* 7 C. C. R. 92; *Pachesa, et al.,* vs. *State,* 7 C. C. R. 123; *Miller, et al.,* vs. *State,* 7 C. C. R. 129; *Cavender, et al.,* vs. *State,* 7 C. C. R. 199; *Connole, et al.,* vs. *State,* 7 C. C. R. 232. These cases were obviously an attempt by the court to mitigate the harshness of the rule, and yet avoid the pitfalls inherent in the equity and good conscience doctrine.

This trend continued until the court became aware of the dangerous tendency of its decisions, the extent to which they were being carried, and the fact that they were without legal authority. There then began a return to the original holdings of the court. After an exhaustive review of authorities, and with knowledge of the unfortunate lack of uniformity in the prior decisions of this court, in the case of *Crabtree* vs. *State,* 7 C. C. R. 207, the court held that although the Legislature has power to pay claims on its own initiative, this court in passing on claims can exercise only such authority and power as are delegated to it under the terms and provisions of the Court of Claims Act; that under paragraph 4 of Section 6 of the Court of Claims Act, it has no authority or power to allow any claim presented for consideration unless the same is based upon a legal or equitable right. The court held that paragraph 4 of Section 6 of the Act merely defines the jurisdiction of the court, and does not create a new liability against the State, nor increase or enlarge any existing liability; that the jurisdiction of this court is limited to claims in respect of which the claimant would be entitled to redress against the State either at law or in equity, if the State were sueable; that this court has no authority to allow any claim unless there is a legal or equitable obligation on the part of the State to pay the same; that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure such an award.

It is admitted that the State, in the exercise of its governmental function, is not liable under the doctrine of *respondeat superior* for the ordinary negligence of its servants and agents; there appears no principle of law under which it can

be held liable for the gross or wanton negligence of such servants and agents in the absence of a statute. The alleged exception has no basis in law and is no longer recognized by this Court. *Garbutt* vs. *State*, 10 C. C. R. 37; *Stanley* vs. *State*, 10 C. C. R. 146.

The rule as laid down in the case of *Crabtree* vs. *State, supra,* we believe to be the only rule which this court can follow, although the appeal to its sympathies in cases of this kind is naturally very great. The motion for rehearing is therefore denied.