Amanda Hendricks, Administratrix of the Estate of Marcine A. Hendricks, Deceased, Appellant, v. Urbana Park District, Appellee.

Gen. No. 8,576.

at the October term, 1931. Heard in this court Opinion filed February 1, 1932.

BARR & THOMAS and HERRICK & HERRICK, for appellant.

BUSCH & HARRINGTON, for appellee; C. E. TATE, of counsel.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellant brought this suit in the Champaign county circuit court to recover damages alleged to have been sustained by her, growing out of the death of appellant's intestate, which occurred on August 5, 1930, charged to have been caused by the negligence of appellee, a municipal corporation, organized under the laws of this State, by virtue of an act of the General Assembly entitled, "An Act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water," approved June 24, 1895. Cahill's St. ch. 105, ¶ 295 et seq.

It was alleged in the declaration that appellee "under authority vested in it by the laws of the State of Illinois, had the control, management and supervision of the park system in the City of Urbana and had and was maintaining among other conveniences for amusement and entertainment of the general public, a swimming pool to be used for swimming and bathing for the use of which the defendant charged the public a fee of 25 cents a person; that it was the duty of the defendant to take all precautionary measures required by reasonable prudence to guard against injuries and dangers which might arise in the use of the swimming pool by the patrons, and to exercise care and diligence in the operation and management of the swimming pool to prevent injuries to persons using the pool; that on, to wit, August 5, 1930, while the plaintiff's intestate, who was an infant of 12 years of age, and who was then and there in the exercise of all due care and caution for

her own safety and the safety of others, and while the parents and next of kin of said intestate were not guilty of any contributory negligence, the plaintiff's intestate having paid the charge made by the defendant for the use of the swimming pool, the defendant, by its agents and servants, who were then and there in charge of, managing and operating the swimming pool, so carelessly and negligently managed and operated the same that by reason of such carelessness and negligence the plaintiff's intestate, while in said swimming pool, was drowned; that the decedent left surviving her, her father and mother and one brother as her heirs and next of kin, who are still living.''

There were six counts in the declaration and various charges of negligence made. Appellee demurred to the declaration, the demurrer was sustained and appellant electing to stand by the declaration, the suit was dismissed and appellant has appealed.

Appellant contends that the use of a park for a swimming pool is not a use for a park for public purposes and if the use is diverted from other than public purposes, in violation of the statute, it is negligence *per se*, citing *Carstens v. City of Wood River*, 332 Ill. 400, 409; and *Partridge v. Eberstein*, 225 Ill. App. 209.

In *Carstens v. City of Wood River, supra,* the court held: ''The conversion of a large portion of a small public park into a swimming pool, pavilion and concessions, and surrounding the portion of the park converted into a swimming pool with a wire fence to prevent the free use of it by the public, are certainly not park purposes.''

This opinion was rendered in December, 1928. On May 20, 1929, section 14 of the act, Cahill's St. ch. 105, ¶ 308, was amended to include the following language: ''The power conferred herein, as above set forth on any park district shall include the power to construct, equip and maintain field houses, gymnasiums, assembly

rooms, comfort stations, indoor and outdoor swimming pools, wading pools, bathing beaches, bath houses, locker rooms, boating basins, boat houses, lagoons, skating rinks, piers, conservatories for the propagation of flowers, shrubs and other plants, animal and bird houses and enclosures, athletic fields with seating stands, golf, tennis, and other courses, courts, and grounds, and the power to make and enforce reasonable rules, regulations, and charges therefor. The express enumeration of each of the foregoing recreational facilities and equipment which park districts are herein given the power to provide shall not be construed as a limitation upon said park districts nor prohibit any park district from providing any other athletic and recreational facilities or equipment which may be appropriate in any park acquired, laid out, established, constructed and maintained by any park district under this Act, nor shall the same in any way be held to limit the power and authority by this Act conferred upon park districts and the commissioners thereof. Any recreational or athletic facilities of the character hereinabove enumerated which have heretofore been acquired, constructed and maintained by any park district organized under this Act are hereby declared to have been constructed under and by lawful authority under the provisions of this Act, and all things properly and regularly done in pursuance thereof by said park district and the commissioners thereof are hereby declared to have been done lawfully under the provisions of this Act.''

Section 14 of said act was also amended at the same time to include the following powers: ''Such park district shall also have power to sprinkle streets lying within its territory, and to take charge of and maintain the parkways upon such streets: *Provided, however,* that the power to sprinkle streets and take charge of and maintain the parkways in such streets shall not be

exercised by such park district until the question as to whether or not it shall exercise such power shall have been submitted to a vote of the people in such district.''

As to the negligence charged in the declaration, it is sufficient to say that appellant's intestate came to her death by drowning in a pool of water, and it was alleged that appellee did not take precautionary measures to protect those using the swimming pool, but managed and operated the same in a careless and negligent manner; that the pool was improperly constructed and was in a dangerous and unsafe condition; that said pool was without sufficient lights; that appellee did not furnish sufficient guards and failed to erect notices as to the depth of the water; that there was not sufficient lookout for the protection of swimmers and that the amusements and pools, maintained by appellee, were of the kind and character that would appeal to and were attractive to and would entice children of tender years.

There is no claim that appellant's intestate was injured in any manner in or about the streets or parkways of the park, or that the park district had ever, by vote or otherwise, adopted the later clauses of the act.

*Partridge v. Eberstein, supra,* is a case where a suit was brought between individuals for injuries caused in an automobile accident where both were using the public highway, and it was held between these parties that, as a general rule, under the laws of the road the violation of a statute was negligence *per se.* Neither of the cases cited is applicable to the facts in this case. A great many cases are cited where the relationship with the municipal body was of a different nature and character than the facts in this case, and the Supreme Court of this State does not seem to have passed upon an identical case. The question is whether

this appellee exercises a public and governmental function, or whether it is local and proprietary.

In *Quinn v. Irving Park Dist.*, 207 Ill. App. 449, a district organized under the same act, it was held: "It follows, therefore, that the park, swimming tank and gymnasium located therein are held for the use of the citizens of the State generally and not for the exclusive use of the citizens of the park district, and the ordinance which seeks to limit the use to the citizens of the district is null and void."

In *Stein v. West Chicago Park Com'rs*, 247 Ill. App. 479, 483, the court held: "It is a well-recognized principle that municipal corporations have a dual character, the one public and the other private, and exercise correspondingly two-fold functions and duties. On the one hand, its powers are of a public and general character, to be exercised by virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants or the general public. On the other hand, its duties relate to those of special or private corporate purposes, for the accomplishment of which it acts through its proper officers or agents. In the first classification, its functions are political and governmental and no liability attaches to it under the common law, nor is it liable for the nonuser or misuser of its power. When acting in its private capacity, however, it may incur liability by reason of its negligence or failure to perform its duties in a proper and careful manner. 43 C. J. 921; *Bedtke v. City of Chicago*, 240 Ill. App. 493."

Of course, *Stein v. West Chicago Park Com'rs, supra,* is based upon the broader ground that the West Chicago Park Commissioners, a municipal corporation, was created by the State legislature as a separate entity for the health, welfare and enjoyment of the general public.

In *Holt v. City of Moline,* 196 Ill. App. 235, 237, Mr. Justice Dibell, rendering the opinion of the court, said: "We are of the opinion that a city is not required by law to keep every part of a public park safe for public travel. Certain parts of a public park should be kept in a safe condition for public travel, but there often are in such a park, ponds, lakes, knolls, ravines and forests not intended and not understood by the public to be intended for public travel; and machinery and appliances with which a park is kept in order may very reasonably be stored in some part thereof."

In *Tollefson v. City of Ottawa,* 228 Ill. 134, 137, it was held that, under the statute, the city had the right to erect and establish hospitals and medical dispensaries and control and regulate the same. The court say: "If the purpose be charitable, then the city is not liable for the negligent acts of its employees in the institution. (*Parks v. Northwestern University,* 218 Ill. 381.)" After considering the statute and ordinances as water works and furnishing water for hire, the court say: "The statute plainly gave to the city the right and power to establish and maintain waterworks, in its private or proprietary capacity, for the benefit and profit of the city. No such right or power is given to the municipality in reference to the erection and maintenance of a hospital, and the case last cited is in this way distinguished from the one at bar. The city did not possess the power, in its private or proprietary capacity, to engage in the business of conducting a hospital for revenue. If the municipal authorities have unlawfully entered upon a course of that character the city cannot be made liable for negligence on their part or on the part of those employed by them in carrying out their purpose. 'In the performance of its police regulations a city cannot commit a wrong through its officers in such a way as to render it liable for their torts. Where the city is simply exercising

its police powers, acts of its officers or agents which are illegal and unlawful are *ultra vires,* and a citizen has no remedy against the corporation for damages caused by such acts of its officers.' *City of Chicago v. Williams,* 182 Ill. 135.''

Other cases hold that where the officers of a city institution are making charges and securing revenue or meeting expenses in part by charges, in violation of law, the city is not liable for their unlawful acts.

In the note to *Bisbing v. Asbury Park,* 80 N. J. L. 416, 33 L. R. A. (N. S.) 523, many cases are collated on this subject and the author of the note states: ''The weight of authority supports the fundamental proposition of law upon which *Bisbing v. Asbury Park* rests, that a municipality maintaining public parks is discharging a public duty, and is not performing a private, corporate function for its own advantage.'' The subject is further discussed in Corpus Juris, vol. 43, pages 921 and 930, and the author states on page 926: ''Whether the duty is absolutely imposed or voluntarily assumed, immunity from liability is made to depend upon the condition that the acts or duties are for the general public good, as distinguished from such acts as inure to the special profit or advantage of the municipality, or are legislative or discretionary, as distinguished from ministerial,'' citing *Wilcox v. Chicago,* 107 Ill. 334. In *Wilcox v. Chicago, supra,* involving the Fire Department voluntarily established by the City, the court sets forth fully the doctrine applied in that case. The court says: ''The exemption from liability is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature,—is one in which the corporation has no particular interest, and from which it derives no special benefit in its corporate capacity; that the members of the fire department, although appointed by the city corporation, are not the agents and servants of the city, for whose conduct it is liable, but

they act rather as officers of the city, charged with a public service, for whose negligence in the discharge of official duty no action lies against the city without being expressly given, and the maxim *respondeat superior* has, therefore, no application."

The court further states: "In favor of the doctrine, it may be that an additional, if not more satisfactory, reason for its adoption and rendering it an exception to the general rule may be found in public policy. If liable for neglect in this case, the city must be held liable for every neglect of that department, and every employee connected with it, when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employees had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to be had for all such and other acts would virtually render the city an insurer of every person's property within the limits of its jurisdiction. It would assuredly become too burthensome to be borne by the people of any large city, where loss by fire is annually counted by the hundreds of thousands, if not by the millions. When the excitement is over and calm reason assumes its sway, it may appear to many where other methods could have been adopted to stay destruction, that appear plausible as theories, and their utter fallacy cannot be demonstrated by any actual test. To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater, burthens than are suffered from the damages from fire. Sound public

policy would forbid it, if it was not prohibited by authority.''

No authority is given by law to the municipality to pay damages in any such case, and no provision is made by law or otherwise to levy and collect taxes or other funds to be applied to such purpose and under the well known rule that municipalities can only exercise such powers as are specially conferred by statutes, or such as may be inferred from the express grant, we are constrained to hold that park districts of the nature of appellee are not liable in damages for the negligent acts of its officers, such as are charged in the declaration in this case.

The judgment of the circuit court of Champaign county is, therefore, affirmed.

*Affirmed.*