(No. 25261.—

ALMA LePITRE, Appellant, *vs.* THE CHICAGO PARK DISTRICT, Appellee.

*Opinion filed June 14, 1940—Rehearing denied October 2, 1940.*

G. E. NELSON, WILEY W. MILLS, OSCAR E. CARLSTROM, and ROBERT C. PIERCE, (ROYCE A. KIDDER, and CLARENCE WM. IDARIUS, of counsel,) for appellant.

JOHN O. REES, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, PHILIP A. LOZOWICK, and EDWARD C. CALDWELL, of counsel,) for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court:

In 1932, Alma LePitre began an action in the superior court of Cook county to recover damages for personal injuries received when the automobile in which she was riding crashed into a concrete structure on Leif Eriksen drive in Chicago. The drive, also known as the "Outer Drive," was at the time of the accident under the governmental jurisdiction of the South Park Commissioners. During the pendency of the proceeding in the trial court, the Chicago Park District was created and by force of the statute succeeded to the interests of the South Park Commissioners and was, by order of court, substituted as a defendant. At the close of plaintiff's evidence, the court directed a verdict for the defendant and entered judgment in bar of the action. The Appellate Court affirmed the judgment and this court granted plaintiff leave to appeal.

The Outer Drive extends north and south and is 75 to 100 feet in width. The concrete structure involved was one of several, spaced at regular intervals and located on

the midline of the drive. That part of the drive located to the west of the center was marked into lanes for south bound traffic and that part to the east for north bound traffic. The concrete structure which the automobile ran into is described as being 30 inches in diameter at the base, decreasing toward the top to 18 inches and is about 5 feet in height, with an electric light on top. Red lights encircled the base some two or three feet above the surface of the drive. Some of the witnesses referred to the structure as a safety island, but in the sense of furnishing a haven of refuge for pedestrians it was not such a structure. The automobile in which plaintiff was riding was going south on or near the traffic lane nearest to the center of the drive. It was dark and a light rain falling. The lights on the top of the structure and at the base were not illuminated, the current having been interrupted for a short space of time.

Plaintiff's action is founded upon the alleged negligence of the defendant in locating and maintaining the concrete structures on the drive and in not having them properly lighted. The court allowed the motion for a directed verdict and, by such ruling, applied the rule which exempts municipalities from liability from the negligent acts of its servants when the negligent acts complained of arise out of the performance of a duty the municipality owes to the public. The propriety of the application of such rule to the facts is the principal question presented on this appeal.

The accident having happened under the regime of the South Park Commissioners, it is necessary to refer to the statute by which it came into corporate existence to determine the purposes for which it was created and the powers and duties imposed upon it to carry out such purposes.

The South Park Commissioners came into being by means of the enabling act of 1869. (Private Laws of 1869, p. 360.) The act authorized the commissioners to acquire certain described lands and directed that when the lands

were acquired they should "be held, managed and controlled by them and their successors as a public park, for the recreation, health and benefit of the public, and free to all persons forever, subject to necessary rules and regulations as shall from time to time be adopted by said commissioners and their successors for the well-ordering and government of the same." By section 10 power was conferred on the commissioners to vacate and close existing roads and they were vested with exclusive authority to lay out new roads. Section 13 gave the commissioners full and exclusive power to govern, manage and direct the park to lay out and regulate the same, to pass regulatory ordinances, to appoint officers and fix their compensation and it was stated in regard to said parks "they shall possess all the power and authority now by law conferred upon or possessed by the common council of the city of Chicago, in respect to the public squares and places in said city."

It was stipulated the Outer Drive is located wholly within Grant and Burnham parks, both of which were under the control of the commissioners, and that the drive was constructed and laid upon submerged lands of Lake Michigan which had been reclaimed by the South Park Commissioners. By an act enabling park commissioners having control over boulevards or driveways bordering upon any public waters in this State, to extend the same, adopted in 1889, (Ill. Rev. Stat. 1939, chap. 105, par. 125,) the commissioners were empowered to construct driveways and boulevards over and upon the bed of such public waters, and by section 4 it was stated that upon the completion of any such boulevard or driveway the title thereto and to the bed thereof was vested in the commissioners for the purpose of a boulevard or driveway and to become a part of the public parks system. It directed that such driveway "shall thenceforth be maintained and controlled by such board in the manner provided by law for the government and maintenance of other boulevards and driveways under

its control." There are other statutory enactments vesting various powers in park commissioners, but the sections referred to are the ones pertinent to the question under discussion.

The language used in the act of 1869 directing that the lands when acquired should be held, managed and controlled by the public park for the recreation, health and benefit of the public free to all persons forever, leaves no doubt as to the legislative intent to create a corporation for the primary purpose of rendering a governmental service to the general public. The promotion of health, comfort and recreation for the general public is, as was said in *Gebhardt* v. *Village of La Grange Park,* 354 Ill. 234, "among the aims of government. * * * To attain such an object is one of the primary purposes of government." The powers given the commissioners to construct and maintain drives and to have general control and management of the parks were granted in the interests of establishing and maintaining a park for public use and not in the promotion of a purely corporate purpose. The direction in the statute that the park shall be used by the public, generally, forever, definitely fixes the ones in whose interest the park was created.

In the enactment of other legislation authorizing park commissioners to acquire additional park area and in the granting of additional powers there has been no deviation from the general purposes and uses as stated in the act of 1869. Therefore, in the creation of Grant and Burnham parks, and the construction of the Outer Drive through them, the commissioners were discharging a duty for the purposes stated in the act of 1869 and to be enjoyed by the public. In *Gebhardt* v. *Village of La Grange Park, supra,* this court held that the maintenance of a swimming pool by the village was the performance of a public duty and in that opinion many cases from other jurisdictions are cited holding that a city or village engaged in the maintenance

of parks and playgrounds is performing a governmental function.

Plaintiff concedes the rule of law to be as stated when applied to cities and villages but contends that in the construction of the Outer Drive, the location of the structures thereon and the lighting of the same, the park district was engaged in a function that was for corporate interests and not in the interests of the general public. Such contention requires consideration of the purposes and functions of the drive and the structures thereon as used in connection with the park.

As stated, the drive is located in two parks which are contiguous and both of which are located on the shores of Lake Michigan. To accommodate the public who wish to enjoy the park and to pass from one point of interest to another, it is necessary to have drives through the park areas, and where parks are contiguous, as are Grant and Burnham parks, it is desirable that the drives be connected so as to make a connected system. The locating of the structure in the center of the drive and the necessity of lighting the same were matters within the discretion of the park commissioners. The structures on the drive served at least a three-fold purpose,—to beautify, to mark the line dividing the north and south bound traffic and to furnish a means to illuminate the drive. It is argued that these improvements were made necessary by reason of the large volume of automobile traffic in the city of Chicago and that since the drive has become a main arterial highway for traffic between the north and south side of Chicago, it is of purely local concern and maintained solely for corporate purposes. As far as the records disclose, the drive was open to the general public and everyone, except a certain class of motor vehicles used in transporting freight, had the right to drive upon it. Under these circumstances, the law can make no distinction between those who travel upon it as a matter of convenience in their own business and

those who go there to view the drive, the lake and the beauties of the park. It is the purpose for which the drive was created and is being maintained, and the duties imposed upon the park commissioners in carrying out the purpose and the right of the public to enjoy it, that mark it as having been constructed and maintained as a governmental function.

Plaintiff refers to such cases as *McCormick* v. *South Park Comrs.* 150 Ill. 516, *West Chicago Park Comrs.* v. *City of Chicago,* 152 id. 392, and *West Chicago Park Comrs.* v. *McMullen,* 134 id. 170, and bases her claim upon the holding that park districts such as the South Park Commissioners are municipal corporations. In arriving at a conclusion in this case it is recognized that the defendant and its predecessor are municipal corporations, but, even so, this does not prevent them from performing a governmental function. The questions presented in the cases cited were not the same as the one presented on this appeal, but there is nothing in the holdings in those cases that is in conflict with the conclusion reached. In fact in the *McMullen case, supra,* the court used the following language: "By adopting the Park act, the people to be affected have consented to the creation of this municipality, and invested it with governmental powers in respect of parks within the district, and the park commissioners have thereby become, as said in *Wilcox* v. *People,* 90 Ill. 186, 'agents by whom, in part, the people of the State carry on government. Their functions are essentially political, and concern the State at large although they are to be discharged within the town of West Chicago'."

Under the conclusions announced on this branch of the case it is unnecessary to consider other points argued in the brief.

The judgment of the Appellate Court was correct, and is affirmed.

*Judgment affirmed.*