Sylvia B. Wattman, Administratrix of Estate of Henry Berg, Deceased, Appellant, v. St. Luke's Hospital Association and Harry Culver, Appellees.

Gen. No. 41,875.

Heard in the third division of this court for the first district at the October term, 1941.

Opinion filed April 8, 1942.

MONTGOMERY, HART, PRITCHARD & HERRIOTT, of Chicago, for appellant; L. EDWARD HART, JR. and EUGENE SWIGART, both of Chicago, of counsel.

STANLEY L. SHETLER, of Chicago, for certain appellee; ERRETT O. GRAHAM, of Chicago, of counsel.

RAWLINS & WRIGHT, of Chicago, for certain other appellee; DON C. WRAY, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On June 2, 1938, Sylvia B. Wattman, executrix of the estate of Henry Berg, deceased, filed a two count complaint in the circuit court of Cook county against St. Luke's Hospital, a corporation, and Harry Culver. The first count alleged that on or about August 13, 1937, Henry Berg employed Culver, a physician and surgeon, to treat him (Berg) for certain sicknesses and maladies from which he was suffering; that Culver accepted such employment and began treating him (Berg); that on or about August 22, 1937, Berg went to the hospital maintained and conducted by St. Luke's Hospital, a corporation, and for a reward then and there agreed upon between Berg and an agent of the hospital, Berg was admitted to the hospital; that for such reward so agreed upon, the hospital entered upon

the maintenance, service and care of Berg, and thereafter, through its agent, continued such maintenance, service and care; that Berg was at all times in the exercise of due care for his own safety; that while Berg was a patient of and under the care and treatment of defendant Culver, and while he was a patient in the hospital under the supervision, care and maintenance of the agents of both defendants, the defendants, or either of them, by themselves or their agents, did one or more of the following negligent acts:

"(a) The defendant, Harry Culver, not regarding his duty as a physician and surgeon, during the time of his treatment of plaintiff's intestate, so unskillfully and negligently conducted himself that in performing an operation for the removal of the prostate gland of plaintiff's intestate he failed to cause plaintiff's intestate to be properly anaesthetized, and as a direct and proximate result thereof plaintiff's intestate, during the course of such operation, felt great pain and anguish and as a further proximate result thereof injuries to his back, head and neck, and bones in his back and neck were broken, and he received a great and severe shock to his nervous system.

"(b) That the defendant, Harry Culver, not regarding his duty as such physician and surgeon during the time that plaintiff's intestate was his patient, so unskillfully and negligently conducted himself in that behalf that by and through his want of skill and care plaintiff's intestate received injuries to his back, neck and head, and divers bones in his back and neck were broken, and plaintiff's intestate suffered a great and severe shock to his nervous system, but said defendant, Harry Culver, carelessly and negligently failed to discover the injuries so sustained by plaintiff's intestate and properly treat them.

"(c) That the defendant, Harry Culver, not regarding his duty as such physician and surgeon during the time that plaintiff's intestate was his patient, so

unskillfully and negligently conducted himself in that behalf that by and through his want of skill and care plaintiff's intestate was allowed to leave the hospital while suffering from injuries to his back, neck and head, and while divers bones in his back and neck were broken, and while plaintiff's intestate was suffering from a great and severe shock to his nervous system, all of which matters the said defendant, Harry Culver, knew or should, upon the exercise of due care and caution, have discovered.

"(d) The defendant, St. Luke's Hospital, a corporation, not regarding its duty in so maintaining its said hospital and caring for plaintiff's intestate, during the time of its treatment of plaintiff's intestate, so unskillfully and negligently conducted itself that during an operation for the removal of the prostate gland of plaintiff's intestate, performed in an operating room by that defendant for that purpose maintained, under the supervision of its agents, and for the use and occupancy of which plaintiff's intestate was charged by said defendant, it failed to cause plaintiff's intestate to be properly anaesthetized, and as a direct and proximate result thereof plaintiff's intestate, during the course of such operation, felt great pain and anguish, and as a further proximate result thereof received injuries to his back, head and neck, and bones in his back and neck were broken and he received a great and severe shock to his nervous system.

"(e) That the defendant, St. Luke's Hospital, a corporation, not regarding its duty in so maintaining its said hospital and caring for plaintiff's intestate, so unskillfully and negligently conducted itself in that behalf that by and through its want of skill and care plaintiff's intestate received injuries to his back, neck and head, and divers bones in his back and neck were broken, and plaintiff's intestate suffered a great and severe shock to his nervous system, but said defendant, St. Luke's Hospital, a corporation, through its agents,

carelessly and negligently failed to discover the injuries so sustained by plaintiff's intestate and properly treat them.

"(f) That the defendant, St. Luke's Hospital, a corporation, not regarding its duty in maintaining its hospital and caring for plaintiff's intestate while plaintiff's intestate was a patient therein, so carelessly and negligently conducted itself in that behalf that by and through its negligence and want of care plaintiff's intestate was allowed to leave said hospital while divers bones in his back and neck were broken, and while plaintiff's intestate was suffering from a great and severe shock to his nervous system, all of which the defendant, St. Luke's Hospital, a corporation, knew or should, by the exercise of ordinary care, have discovered.'' This count also alleged that as a direct and proximate result of the injuries so received, Berg died on October 17, 1937, in the State of Illinois; that he left surviving a widow and other next of kin who were deprived of support by reason of his death; that the widow and next of kin were not guilty of any negligence contributing to the injury or death of Berg, and that plaintiff was duly appointed as administratrix of the estate of the deceased by the probate court of Cook county. The second count is in the language of the first count, to and including the portion quoted. The second count then continues that ''as a direct and proximate result of the injuries so received, plaintiff's intestate was compelled to expend and become liable for large sums of money for medicine, doctors' bills, nursing and hospital bills; that at the time he received such injuries plaintiff's intestate was receiving as a result of the pursuit of his affairs, large sums of money, and as a direct and proximate result of the matters herein above stated was incapacitated from the pursuit of his affairs and lost large gains which he otherwise would have had and received; that on October 17, 1937, plaintiff's intestate died from causes

other than the injuries so received by him, and up to the time of his death he sustained damages, by reason of the matters herein stated, in the sum of $10,000.'' The corporation answered, admitting that it was maintaining a hospital in Chicago; that it was a corporation not for pecuniary profit; that its object was the establishment and maintenance of a hospital for charitable purposes; that it had no capital stock, paid no dividends, and that at the time of the commission of the supposed grievances it was engaged in the maintenance of a hospital for charitable purposes and not for pecuniary profit. The answer admitted that Berg was a patient in the hospital, but that all medical and surgical services rendered were under the charge and control of the physician retained by Berg. It denied any negligence by it or its servants. Culver filed a motion to strike the complaint on the ground that it did not show who were the next of kin of the deceased other than the widow, and that the complaint was duplicitous. On December 6, 1940 this motion was denied. On December 23, 1940, Culver answered. He admitted that he was a physician and surgeon, and denied all the other allegations of the complaint. Plaintiff did not file a reply to the answer. The cause came on for trial on March 27, 1941. The attorney for Culver then moved to require the plaintiff to elect as to which count she desired to proceed under. This motion resulted in a colloquy between the court and the attorneys representing the respective parties. As a result of this discussion, the trial judge announced that he would strike the second count. The attorney for plaintiff stated that he would stand on both counts. The attorney representing the hospital then asked the attorney representing plaintiff as to his position concerning the case against his client. Counsel for plaintiff admitted that he could not maintain an action in tort against the hospital and that the first count, based on the Injuries Act (ch. 70, Ill. Rev. Stat. 1941 [Jones Ill. Stats.

Ann. 38.01 *et seq.*]) was required under the law to be in tort. Counsel for plaintiff, in effect, agreed to the dismissal of the first count as to the hospital corporation. He contended, however, that he could maintain the second count against the hospital on the basis of the violation of a contractual relationship. Plaintiff insisted before the trial judge that she had a right to present evidence and try the case on both counts as to Dr. Culver. The record shows the following statements made by the court and the attorneys:

"Mr. Hart (Attorney for plaintiff): I want to stand on the complaint, if the Court please, and go up on the thing.

"The Court: You preserve your record, and whatever the result is carries the question right up with it.

"Mr. Hart: Yes.

"The Court: Is that the original (indicating)?

"Mr. Hart: Yes. Well, what I mean by that, I don't want to proceed under just the first count under the circumstances.

"Mr. Wright: That is all that is left then. When the Court strikes the count it is out.

"Mr. Hart: Well, I mean you can dismiss the case as to the other count, because I don't want to go ahead.

"The Court: Well, I can't dismiss as to Culver on the first count.

"Mr. Hart: I appreciate that, but I won't offer any evidence.

"The Court: You refuse to proceed?

"Mr. Hart: Yes, I mean I feel that I have two actions here, and it is going to injure me to go ahead solely upon one, so I want to, under those circumstances, preserve the thing and go up on them, my right to present both of them at one time.

"The Court: All right. Now I suppose you have given that considerable thought.

"Mr. Hart: Yes, there is no doubt about it. I think that the complaint is perfectly good. . . .

"The Court: All right. Let the record show that the Court is ready to proceed, with the jury sworn to answer questions, and the Court having stricken the second count on motion of the defendants, and counsel now refuses to proceed with the trial of the case on the first count and declines to offer any evidence, and the Court being ready and willing to hear the case and to receive evidence, is obliged to dismiss the suit for want of prosecution.

"Mr. Hart: May the record also show my reason for so refusing—

"The Court: Yes.

"Mr. Hart:—to go ahead.

"The Court: Yes.

"Mr. Hart: That being that I feel that I have a right of action under both the first and second counts, and that it would be injurious to me to proceed solely under the first count with the second count stricken out, and that consequently I have refused to go ahead under the first count.

"The Court: All right. That preserves it."

Thereupon the court struck the second count of the complaint, dismissed the cause for want of prosecution and entered judgment against plaintiff for costs. Plaintiff appeals and asks that the judgment be reversed and that the cause be remanded for trial.

Plaintiff states her theory to be that "under subsection 2 of section 43, Civil Practice Act of 1933, where there is doubt as to which of two or more statements of fact are true, separate counts may be stated in the alternative covering the doubtful facts; that, further, if a doubt still remains concerning which a finding of fact by the jury should be made, the case should be submitted to the jury upon the alternative causes of action stated in the separate counts. If, however, when all proof is in, the doubt is removed at that time the plaintiff should be forced to elect the appropriate cause of action and dismiss the alternative." Defend-

ant Culver states his theory to be that "plaintiff did not have the cause of action attempted to be asserted in Count 2 of the complaint, which was likewise the theory of the trial court. The case being called for trial, the trial court struck Count 2 of the complaint and on motion of the co-defendant, St. Luke's Hospital, dismissed it as to Count 1 because it was a charitable institution and therefore not liable for torts of its servants or agents; that the plaintiff thereupon refused to proceed to trial on Count 1 against the defendant, Harry Culver, and the court then dismissed the case for want of prosecution." The theory of the hospital is that "there should have been an election between the two counts before the trial began, but that in any event, since it is admitted by the plaintiff that the hospital is and was a charitable institution and not liable to suit in tort, the dismissal of both counts as to the hospital was proper."

Plaintiff asserts that an action for injuries to the person survives the death of the injured party where death results from causes other than the injury, and that when a party is in doubt as to which of two alternate statements of a cause of action are true, he may plead them in the alternative. Dr. Culver replies that no cause of action accrues to an administrator for injuries to a decedent not resulting in death unless an action was begun by the decedent in his lifetime; that the order striking Count 2 was interlocutory and not appealable; that Counts 1 and 2 of plaintiff's complaint are not alternative statements of the same cause of action and were improperly joined; that no prejudice resulted to the plaintiff by the order of the court requiring her to proceed to trial on one count only, and that the order dismissing the case for want of prosecution was invited by the plaintiff and she is, therefore, in no position to complain. The brief filed on behalf of the hospital adopts the points urged by Dr. Culver, and also asserts that the action of the court was cor-

rect since a charitable institution is not liable for torts. The first count alleges that as the direct and proximate result of the injuries received, plaintiff's intestate died in this State on October 17, 1937, that he left a widow and other next of kin who were deprived of their means of support by reason of his death. All of the parties are in agreement that the first count alleged a case against Dr. Culver under the provisions of the Injuries Act (ch. 70, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 38.01 *et seq.*]). If Berg died as a direct and proximate result of the injuries sued for, the only right of action available to the administratrix is under the Injuries Act. Count 2, however, is not bottomed on the Injuries Act. This count alleges that as a direct and proximate result of the injuries received, plaintiff's intestate was compelled to expend and become liable for large sums of money for medicine, doctors' bills, nursing and hospital bills; that at the time he received the injuries, plaintiff's intestate was receiving as a result of the pursuit of his affairs, large sums of money, and as a direct and proximate result of the matters stated was incapacitated from the pursuit of his affairs and lost large gains which he otherwise would have had and received; that on October 17, 1937, plaintiff's intestate died from causes other than the injuries so received by him, and up to the time of his death he sustained damages in the sum of $10,000. Plaintiff relies on sec. 494, ch. 3, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 110.591] (sec. 339 of the Administration of Estates Act) which reads: "In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel). . . ." She insists that under the language of this statute the cause of action which Berg had against the defendants during his lifetime, survived. Defendants maintain that no cause of action accrues to an administrator for injuries to a de-

cedent not resulting in death unless an action was begun by the decedent in his lifetime. They call attention to the fact that section 494 provides for the survival of actions to recover damages for an injury to a person, but does not provide for the survival of rights of action. The position of the defendants is that the legislature intended that actions should survive and that there is no provision for the survival of a cause of action. They quote definitions of the word "action" and contend that it means a legal proceeding in a court of justice by a plaintiff against a defendant. Plaintiff argues that section 494 provides for the survival of causes of action and suits actually commenced in a court of law. We have read all of the cases cited. In the case of *Genslinger v. New Illinois Athletic Club of Chicago,* 229 Ill. App. 428, a question arose under section 123 of the Administration Act (now sec. 494, ch. 3, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 110.591]) whether or not an action for conversion of personal property survived the death of a person entitled to bring action. Counsel for appellee maintained that the action did not survive under section 123 of the Administration Act because Genslinger had not commenced the action before his death and that section 123 provided only for the survival of actions commenced by the person in his lifetime. Counsel for the appellee argued that there was a vast difference between "actions" and "causes of action" and that the term "action" applied to a proceeding in a court, while a "cause of action" is the right to institute a judicial proceeding. This court said at page 451:

"We deem it unnecessary to cite further cases on this point. The above authorities are sufficient to show that the courts of this State, like the courts of others, have used the terms 'action,' 'causes of action' and 'right of action' synonymously. We are of the opinion that the word 'action' as used in section 123 means

'causes of action' or 'right of action' and is not limited in meaning to an action actually commenced in court.'' We are of the opinion that the *Genslinger* case states the law and that the word ''action'' as used in section 494 is synonymous with ''cause of action'' or ''right of action,'' and is not limited to an action commenced in court. Hence, plaintiff had the right to prosecute both the first and second counts of her complaint.

Defendants argue that Counts 1 and 2 are not alternative statements of one cause of action and were improperly joined. They cite opinions delivered prior to the enactment of the Civil Practice Act. Section 43 of the Civil Practice Act (sec. 167, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.043]) provides that parties may plead ''as many causes of action . . . as they may have'' and that ''When a party is in doubt as to which of two or more statements of fact is true, he may state them in the alternative, or, when they appear in different counts or defenses (whether legal or equitable) he may state the counts or defenses which contain them in the alternative, and a bad alternative shall not affect a good one.'' Section 44 (sec. 168 [Jones Ill. Stats. Ann. 104.044]) provides that ''Subject to rules any plaintiff or plaintiffs may join any causes of action, whether legal or equitable or both, against any defendant or defendants. . . . But the court may, in its discretion, order separate trials of any such causes of action . . . if they cannot be conveniently disposed of with the other issues in the case. Any cause of action . . . may be transferred at any time, by order of the court, from the law docket to the equity docket, or vice versa, as convenience and the nature of such action . . . may require, and when so transferred shall proceed as though commenced on the proper side of the court; and that any issue may at any time, by order of the court, be transferred for trial to the proper side of the

court." We are satisfied that under the liberal provisions of the Civil Practice Act, plaintiff had the right to join the two causes of action.

Defendants maintain that the order striking Count 2 was interlocutory and cannot be appealed. Plaintiff agrees with this contention. She states, however, that she is not appealing from the order striking Count 2, but is appealing from the judgment which was entered following the action of the court in striking this count. The record shows that the appeal is from the judgment. Hence, the point is without merit. Defendants insist that no prejudice resulted to the plaintiff by the order of the court requiring her to proceed to trial on one count only. They also maintain that the order dismissing the case for want of prosecution was invited by the plaintiff and she is, therefore, in no position to complain. This argument is based largely on the provision of section 44 of the Civil Practice Act that the court "may in its discretion, order separate trials of any such causes of action . . . if they cannot be conveniently disposed of with the other issues in the case." The attorney representing Dr. Culver asked the court to require plaintiff to elect as to which count she wished to proceed under. However, the court did not attempt to exercise a discretion relative to granting a separate trial. Instead, the court struck the second count. It is interesting to note that the motion in the nature of a demurrer which was filed by Dr. Culver before he filed his answer, did not raise any question about the survival of the cause of action stated in the second count. In the colloquy following Dr. Culver's oral motion to require the plaintiff to elect, the attorney for Dr. Culver stated that he was again making the point on which he was overruled before the motion judge. The record does not show that he made any point before the motion judge as to the survival of the right of action stated in the second count. We cannot agree with the contention of defendants that

the order dismissing the cause for want of prosecution was invited by the plaintiff. The colloquy which we have recited clearly shows that all of the parties, including the trial judge, understood that plaintiff was standing on the first and second counts as to Dr. Culver and on the second count as to the hospital corporation, and that plaintiff was going to prosecute an appeal in order to sustain her right to proceed under the second count as to the hospital corporation and under both counts as to Dr. Culver. We are of the opinion that the trial court should have permitted plaintiff to introduce her testimony under both counts. If such testimony did not tend to prove the allegations of one of the counts, that count could be stricken. The court also could have ruled on the motion of Dr. Culver to require the plaintiff to elect on which count she would proceed, which in effect, was a request for a separate trial as to each count.

In the argument in the trial court plaintiff conceded that the allegations of the first count did not state a cause of action against the hospital corporation. The record shows that the hospital is a nonprofit charitable corporation. The parties agree that such a corporation cannot be sued for the torts of its servants. Plaintiff insists, however, that she does have a right of action against the hospital corporation based on the second count. She points out the allegation that on August 22, 1937, Berg and the hospital, through its agent, agreed, for a reward to be paid to the hospital for its services, to bestow certain care, and that the hospital failed to perform the service which it contracted to perform. Plaintiff leans heavily on the case of *Armstrong v. Wesley Hospital,* 170 Ill. App. 81. A reading of that case discloses that the Wesley Hospital undertook for a consideration of $20 to give Minna Armstrong certain accommodations and services. She claimed that the services which defendant promised to give were not given, and brought suit

in assumpsit seeking damages for breach of contract. The court directed a verdict for the defendant and entered judgment accordingly. In reversing the judgment and remanding the case, the Appellate Court drew a distinction between the case of *Parks v. Northwestern University,* 218 Ill. 381, and the case before it, and said at page 83:

"However, in the university case and other like cases the suit was an action on the case for personal injuries, while the case at bar is trespass on the case upon promises. The declaration is in assumpsit, not in tort. It sets up a contract between the parties, wherein for a consideration of $20 paid to the defendant the latter undertook and promised to do certain things, and it further alleges that the defendant failed to perform its promises. Justice would certainly suggest that if these allegations are true, plaintiff is entitled to recover in assumpsit at least the money paid by her to defendant, and possibly whatever damages for the breach of the contract may be capable of exact proof, although we express no opinion as to the measure of damages, that question not being before us in this case. . . . In our opinion the trial court in the case before us erred in treating this case as an action in tort instead of an action in assumpsit, and we hold that the jury should have been permitted to pass upon the facts as alleged in the declaration." The *Armstrong* case relied upon the case of *Ward v. St. Vincent's Hospital,* 39 App. Div. 624, 57 N. Y. S. 784. In the instant case plaintiff suggests that only the measure of damages, not an issue at the present time, is affected by the consideration of the form of action. As we have seen, the second count adopts most of the allegations of the first count. The part of the first count so adopted by the second count charges that the hospital corporation, by its servants and agents, so unskilfully and negligently conducted itself that the plaintiff was injured, as therein de-

tailed. The second count charges that as a direct and proximate result of the injuries so received, Berg was compelled to expend and become liable for large sums of money for medicine, doctors' bills, nursing and hospital bills, and that as a direct and proximate result of such injuries he was incapacitated from the pursuit of his affairs and lost large gains which he otherwise would have received. The allegations in the second count, except for the allegation that Berg died from causes other than the injuries so received, are substantially the same as those in the first count. The effect of plaintiff's argument is that by changing the form of the action against the hospital corporation from tort to contract, such action may be maintained. In the *Parks* case where plaintiff sought damages for injuries resulting in the loss of an eye through the negligence of one of the professors employed by defendant while plaintiff was in his charge as a student in a laboratory of defendant, a demurrer was sustained to the declaration and judgment entered against plaintiff. The Appellate Court affirmed the judgment. (121 Ill. App. 512.) The Supreme Court, in affirming the trial court and the Appellate Court, said (218 Ill. 381, 384):

"The appellee university is a private corporation but is organized for purely charitable purposes. It declares no dividends and has no power to do so. It depends upon the income from its property and the endowments and gifts of benevolent persons for funds to carry out the sole object for which it was created, —the dissemination of learning. Its charter secures to all persons of good moral character who have made sufficient preliminary advancement the benefits of the university, and all of its funds and property, from whatever source derived, are held in trust by it, to be applied in furtherance of the purpose of its organization and increasing its benefits to the public. The funds and property thus acquired are held in trust,

and cannot be diverted to the purpose of paying damages for injuries caused by the negligent or wrongful acts of its servants and employees to persons who are enjoying the benefit of the charity. An institution of this character, doing charitable work of great benefit to the public without profit, and depending upon gifts, donations, legacies and bequests made by charitable persons for the successful accomplishment of its beneficial purposes, is not to be hampered in the acquisition of property and funds from those wishing to contribute and assist in the charitable work, by any doubt that might arise in the minds of such intending donors as to whether the funds supplied by them will be applied to the purposes for which they intended to devote them, or diverted to the entirely different purpose of satisfying judgments recovered against the donee because of the negligent acts of those employed to carry the beneficent purpose into action. That the appellee, though a private and not a public corporation, being a purely charitable institution, is not answerable for the negligent acts of its employees, is held but with little diversity of opinion.'' The reasoning behind the rule is that since the trustees cannot divert the funds by their direct act from the purpose for which they were donated, such funds cannot be indirectly diverted by the tortuous or negligent acts of the managers of the funds, or their agents or employees. The *Parks* case holds that the rule applies to private as well as public charitable corporations. It will be observed that in the *Parks* case the Supreme Court announced that a charitable institution is not answerable for the negligent acts of its employees. In the case at bar, plaintiff bases her action against the hospital corporation upon the negligence of the servants of such hospital. Section 31 of the Civil Practice Act states that neither the names theretofore used to distinguish the different ordinary actions at law, nor any formal requisites theretofore appertaining to the manner of pleading such actions

shall thereafter be deemed necessary or appropriate, and that the pleadings shall contain a plain and concise statement of the pleader's cause of action. If we adopted plaintiff's theory as to the action against the hospital corporation, all that would be necessary in order to overcome the rule laid down in the *Parks* case, would be to change the form of action from tort to contract. The *Armstrong* case on which plaintiff relies, carefully points out that if the plaintiff's allegations were true, she was entitled to recover in assumpsit "at least the money paid by her to defendant and possibly whatever damages for the breach of the contract may be capable of exact proof." We have examined the abstract and briefs in the *Armstrong* case, and find that there plaintiff relied on two counts, each based on a contract. In her brief Mrs. Armstrong said: "The plaintiff seeks to recover from the Wesley Hospital for the breach of two simple contracts. These contracts are set out in a declaration containing two counts. The evidence shows that the breach of these contracts was accompanied by some negligence; that the action is based on the rights of the plaintiff under these contracts and not upon the negligence accompanying the breach of the contracts." An examination of the authorities satisfies us that a charitable institution such as St. Luke's Hospital, is necessarily competent to contract in order to carry out the purpose for which it was incorporated and may be sued for breach of such contracts. We are convinced, that the doctrine of *respondeat superior* does not extend to such institutions. The rule followed in the *Armstrong* and the *Ward* cases would inevitably abrogate the doctrine announced in the *Parks* case— that a charitable trust is excepted from the rule of *respondeat superior*. In the *Parks* case (121 Ill. App. 512) the Appellate Court said (517):

"It is further urged that the plaintiff was a student for hire, and that the defendant is authorized to charge and receive tuition by its charter. Therefore,

when the plaintiff was admitted as a student and paid his tuition, a contract existed between the plaintiff and defendant in which the defendant assumed precisely the obligations and incurred precisely the same liability an individual would have incurred under a like contract. We are of the opinion that the fact that the plaintiff was required to and did pay tuition for the instruction and benefits offered by the defendant, does not deprive the defendant of its eleemosynary character. The amounts thus received from plaintiff and other students are not for private gain, but contribute to the funds of the institution and enable it more effectually to accomplish the purposes for which it was founded and organized. The fact that the defendant received from the plaintiff and other students tuition, does not make it the less a public charity, nor does it expose the trust fund to the liability of being depleted or frittered away by the negligence of its officers, professors or employees. In case of injury the wrong-doer, not the trust fund, must respond.''

We are of the opinion that the complaint in the instant case does not state a cause of action against the St. Luke's Hospital Association under either count.

For the reasons stated, the judgment of the circuit court of Cook county is affirmed as to the defendant St. Luke's Hospital Association, and reversed as to the defendant Harry Culver, and remanded with directions to vacate the order dismissing the cause for want of prosecution as to Harry Culver, and to vacate the order striking the second count of the complaint as to Harry Culver, and for further proceedings not inconsistent with this opinion.

*Judgment affirmed as to St. Luke's Hospital Association and reversed and remanded with directions as to Harry Culver.*

HEBEL and KILEY, JJ., concur.