**CITY OF HOUSTON, Petitioner,**

v.

**Odell K. GEORGE et ux., Respondents.**

**No. B–2726.**

Supreme Court of Texas.

March 22, 1972.

William A. Olson, City Atty., Joseph G. Rollins, Asst. City Atty., Houston, for petitioner.

Harry Burns, Houston, for respondents.

REAVLEY, Justice.

The City of Houston was sued by the parents of an eleven year old boy who drowned in water located in a garbage disposal area. The trial court entered judgment for the City when plaintiffs rested their presentation of evidence, but the court of civil appeals reversed and remanded for trial. 465 S.W.2d 387. We find no escape from the rules of municipal immunity from liability and uphold the decision of the trial court.

On the afternoon of May 8, 1967 Victor Roy George joined two playmates after his fifth grade classes had recessed; they first rode their bicycles to Blue Ridge Park where they watched a baseball game being played. Victor and his friends left the baseball diamond area to proceed, as they had done on other occasions, onto the adjacent garbage dump. In their excursion through the dump grounds, Victor discovered a piece of styrofoam floating in a pool of water. When Victor attempted to reach the styrofoam with the aid of a stick, he slipped into the water. Because of the steepness of the bank and the looseness of the dirt, he was unable to climb out of the water and despite the assistance of his friends Victor drowned.

The City of Houston acquired approximately 300 acres of land in this vicinity in 1937. Initially the entire tract was designated the Holmes Road Land Fill and used for the disposal of trash and garbage by incineration and by burial in the ground.

In 1953 the City dedicated for park purposes a 20 acre tract on the northeast corner of the 300 acres as well as a 12 acre tract on the southeast corner. The area on the southeast corner came to be known as Blue Ridge Park.

The appellate record does not give us a full understanding of the premises of the park and its boundaries. We have only blurred reproductions of pictures of the western area. We are told that a library building and health center, as well as swings and other playground equipment, are located in the park. At the northwest corner of the park where one of the baseball diamonds is located, a substantial embankment runs between the park and the dump ground. The embankment was less steep at the spot where the boys left the park and entered the dump, but there is no question but that the appearance of the two areas was different or that the boys knew they were on the dump and outside of the park when the water hole was encountered.

The hole was approximately 25 or 30 feet in diameter and 12 or 15 feet deep; it was dug by the City for the purpose of burying refuse. The water collected either by leeching out of garbage or from rainfall or from both sources. This was all customary to the operation of the dump or landfill by the City, as similar holes were excavated thereon at all times while the premises were used for waste disposal.

■ It may be assumed that the danger of the water-filled excavation itself and the frequent presence of children there would have supported a cause of action against the City in the absence of governmental immunity. However, in that delineation between proprietary and governmental functions, garbage disposal is held to be on the governmental side where a city is not liable for damages caused by negligence of its officers or employees. City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965 (1932); City of Fort Worth v.

George, 108 S.W.2d 929 (Tex.Civ.App. 1937, writ ref'd).

The court of civil appeals has held that the plaintiffs made a case for the jury because of evidence of the danger created by the City on the dump ground, and that court has met the problem of immunity by saying that the evidence raises an issue that the water hole constituted a nuisance which would put the case within an exception to the bar of immunity.

There is authority for the proposition that a municipality, though otherwise immune from liability, loses that immunity if the danger which caused the harm is designated a nuisance. There is considerable difference between the holdings in other jurisdictions as to what may constitute a nuisance for the application of this exception to immunity. Lehmkuhl v. Junction City, 179 Kan. 389, 295 P.2d 621, 56 A.L. R.2d 1409 (1956); Carabetta v. City of Meriden, 145 Conn. 338, 142 A.2d 727 (1958); Dollar Savings & Trust Co. v. City of Youngstown, 19 Ohio App.2d 225, 250 N.E.2d 883 (1969); Iseminger v. Black Hawk County, 175 N.W.2d 374 (Iowa 1970); Anno. 56 A.L.R.2d 1415 (1957). There is language in an early Texas opinion which would apply the exception where the effect of the danger or harmful condition does not extend beyond the bounds of the municipal property. Wiggins v. City of Fort Worth, 299 S.W. 468 (Tex.Civ. App.1927), aff'd City of Fort Worth v. Wiggins, 5 S.W.2d 761 (Tex.Com.App. 1928). However, in Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565 (1941), where a child had drowned in a city cesspool, this court held that the exception to immunity from liability depended upon the showing of a nuisance constituting an unlawful invasion of the rights of others. As an example of a nuisance in this sense, the Gotcher opinion refers to the case of City of Fort Worth v. Crawford, 74 Tex. 404, 12 S.W. 52 (1889), where the nuisance was a dump ground operated in such a manner as to cause nox-

ious and offensive odors to invade the premises of the adjoining landowner.

If an exception to governmental immunity is to be allowed in cases where the harm and danger occur on city premises, it seems preferable to avoid categorizing the condition of the land as a nuisance and to predicate liability upon the maintenance of the condition dangerous to human life and upon the failure of the city to give warning or reasonable protection to persons known to be exposed to a continuing hazard. There is much to commend such a rule, but it is contrary to precedent in Texas. Gotcher v. City of Farmersville, *supra*; Parson v. Texas City, 259 S.W.2d 333 (Tex.Civ.App.1953, error ref'd); Braun v. Trustees of Victoria Ind. School Dist., 114 S.W.2d 947 (Tex.Civ.App.1938, error ref'd); Strickland v. City of Odessa, 268 S.W.2d 722 (Tex.Civ.App.1954, no writ).

If this court were prepared to reform the rule of liability of municipal corporations in this respect, we would be met by the Texas Tort Claims Act, Art. 6252–19, Vernon's Ann.Civ.St., as to injuries occurring after January 1, 1970. The 61st Texas Legislature thereby provided in Section 14(11) that the governmental liability allowed by the statute would not apply to a "claim based upon the theory of attractive nuisance." Problems are presented as to the effect of this provision, but it probably preserves immunity against the claim of a trespassing child. This court does not choose to overrule the holding of Gotcher v. City of Farmersville, *supra*, for purposes of allowing recovery in this one case, which overruling would have to be done in the face of a contrary legislative determination controlling after adoption of the Texas Tort Claims Act.

 Plaintiffs also contend that the City is liable for its failure to have a fence or warning signs in the park to prevent children from going onto the garbage dump. The City enjoys no immunity from liability for its operation and maintenance of the park premises. Dancer v. City of Houston, 384 S.W.2d 340 (Tex.1964). It is argued that the failure of the City here is analogous to the failure for which there was municipal liability in City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125 (1945). Recovery was there allowed for injuries incurred when a boy on his bicycle failed to follow an abrupt turn of the city street and went over a bluff located 55 feet from the street. This court held that the City had a duty to place some warning or barrier near the turn of the street.

The injured boy in the Lee case thought that the street continued in the direction of his travel and that he was on it. He had no intention to depart from the city's street. The basis of the liability was the rule that requires a municipality to protect the *user of a roadway* from a condition beyond the road itself but which presents a recognizable danger to the normal *user of the road*. Prosser, Law of Torts, 352 n. 19 (4th ed. 1971). The analogy would have some force if Victor George had fallen into the water while chasing a ball thrown in a game being played in the park. If while he was at play in the park, he had inadvertently run beyond its boundary line into an adjacent hazard, there would have been a causal connection between the park operation or premises and the injury. But that is not this case. Victor George was not playing at the park when he came to the dangerous water. He had left the park intentionally to play on the dump grounds. He and his friends had walked several hundred feet to find a route they could travel over the embankment to reach the garbage dump. The City is not required to prevent children from leaving its parks. The park was safe; the dump was dangerous. Under Texas law the City is not liable for consequences of the danger that existed.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.