Robert Ronald FLIPPIN et al., Appellants,

v.

CITY OF BEAUMONT, Appellee.

No. 7726.

Court of Civil Appeals of Texas, Beaumont.

May 29, 1975.

Rehearing Denied July 10, 1975.

KEITH, Justice.

Plaintiffs appeal from an adverse judgment rendered in favor of the City of Beaumont after the trial court sustained the City's motion for summary judgment.

On August 8, 1969, the minor plaintiff, then sixteen years of age, sustained injuries in the course of his employment with the lessee of Beaumont Municipal Airport. He was engaged in disassembling the beacon from the tower on a building when it toppled from its moorings causing the boy to fall to the ground, whereby he sustained serious injuries. After receiving workmen's compensation benefits from his employer's carrier, this suit was brought against the City of Beaumont, a Home Rule city, to recover his damages.

Plaintiffs' contentions were set out in considerable detail in an opinion by Justice Stephenson when another facet of this case was under review. *City of Beaumont v. Ranger Insurance Company*, 505 S.W.2d 934, 935–936 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.)[1]

City answered tendering the defense, inter alia, of sovereign or governmental immunity and moved for summary judgment. It is from the summary judgment entered in favor of City that plaintiffs and intervenor appeal.[2]

Plaintiff labors under an extremely heavy and difficult burden in this case. Indeed, his able counsel concede that to prevail he must persuade us to overrule the decision of our Supreme Court in *City of Corsicana v. Wren*, 159 Tex. 202, 317 S.W.2d 516 (1958), which in turn held valid a statute [Vernon's Tex.Rev.Civ.Stat.Ann. art.

Michael S. Petit, Harold Peterson, Dale Dowell, Beaumont, for appellants.

O. J. Weber, Jr., Kenneth E. Wall, Jr., Beaumont, for appellee.

1. In the cited case, this court held that Ranger was obligated to defend the City because of a policy of liability insurance theretofore procured by and furnished to City by the lessee of the airport.

2. The minor plaintiff was joined by his father, individually and as next friend, and Aetna Casualty and Surety Company, the workmen's compensation insurance carrier for the minor plaintiff's employer, intervened seeking to enforce its subrogation rights. We will not have occasion to refer to either the father or the compensation carrier hereafter and will refer to the minor as plaintiff and the defendant simply as "City."

46d–15 (1969)] which legislatively determined that the operation of a municipal airport was a governmental function. Thus, we do not write upon a clean slate; consequently, we decline to overrule *Wren* and its progeny.[3] As an intermediate court, we are bound to follow the decisions of our highest court; and, if *Wren* is to be altered, "any change in the rule should be made by this [Supreme] Court rather than the intermediate court." *Wilkinson v. Stevison,* 514 S.W.2d 895, 897 (Tex.1974).

Plaintiff argues, very persuasively, that the courts are not bound by the legislative declaration in the Municipal Airports Act that municipal activities in connection therewith are governmental functions; and, to that extent, *Tex.Rev.Civ.Stat.Ann. art. 46d–15* is unconstitutional. The authorities cited, while pertinent, are those cited by Justice Greenhill in his *Wren* dissent. We are not at liberty to accept the argument which would destroy the binding effect of the determination made in *Wren.*

The doctrine of stare decisis prevents our reconsideration of the rule enunciated in *Wren,* supra. In *Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964), the rule governing our review of the points under discussion is stated in these words:

"After a principle, rule or proposition of law has been squarely decided by the Supreme Court, or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties."

Not being at liberty to reexamine the rule announced in *Wren* under the doctrine of stare decisis, we overrule points one and two.

By point three plaintiff contends that the legislative declaration in the Municipal Airports Act "was changed prior to the injuries complained of in this cause by the passage of the Texas Tort Claims Act." Again, we disagree.

The Texas Tort Claims Act, *Tex. Rev.Civ.Stat.Ann. art. 6252–19 (1970),* became effective January 1, 1970 [Id. § 22] while plaintiff sustained his injuries on August 8, 1969. Section 14 of the Act reads:

"The provisions of this Act shall not apply to:

"(1) Any claim based upon an act or omission which occurred prior to the effective date of this Act."

City had governmental immunity at the time of the accident and we follow the rule enunciated in *City of Houston v. George,* 479 S.W.2d 257, 259 (Tex.1972), wherein the Court said:

"This court does not choose to overrule ⁂ [*City of Corsicana v. Wren,* as applied to this case] ⁂ for [the]

3. *Wren, supra,* has been cited and followed in these cases: *Dobbins v. Texas Turnpike Authority,* 496 S.W.2d 744, 747 (Tex.Civ. App.—Texarkana 1973, writ ref'd n. r. e.), in upholding a legislative declaration that a particular activity is "governmental" and protected by the doctrine of sovereign immunity except as modified by statute; *State v. City of Dallas,* 319 S.W.2d 767, 774 (Tex. Civ.App.—Austin 1958), *affirmed* 160 Tex. 348, 331 S.W.2d 737 (1960), upholding an act relating to the relocation of public utilities inside of state highway rights-of-way; *Atkinson v. City of Dallas,* 353 S.W.2d 275, 277 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.), denying an injunction to restrain the acquisition of additional airport runways; *Tompkins v. City of El Paso,* 449 F.2d 842, 844 (5th Cir. 1971), following *Wren* and holding that a sidewalk adjacent to the city airport was a part thereof and the city was protected under the statutory grant of governmental immunity upheld in *Wren; Strauss v. Decatur Park District,* 177 F.Supp. 881, 885 (S.D.Ill.1959), which followed *Wren* on the theory of governmental immunity.

But, in *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 704 (1959), Justice Greenhill, speaking for a unanimous court, raised a flag on *Wren* in footnote 11 by pointedly noting that he and three other justices had dissented in *Wren* which was *not* cited in the body of the opinion although it was pertinent to the discussion.

purposes of allowing recovery in this one case, \* \* \*."

Point three is overruled.

Finally, plaintiff argues that the Municipal Airports Act "does not apply to airport premises leased by a city to a third party." The Act itself [*Art. 46d–4(b)*], quoted in the margin, permits leasing of the airport premises to another.[4]

There is nothing in the Act which implies that the City loses its sovereign immunity by leasing the airport to another. The acts and omissions which plaintiff charged the City are all items classified as "governmental" by the Act itself. Since the purpose of the Act was to confer sovereign immunity, this Court must not, under the authorities previously cited, thwart the plain legislative intent by destroying the City's immunity simply because it was a lessor and not an operator of the airport.

We do not reach the argument of plaintiff that the City did not, in its summary judgment proof, negate any actionable negligence on its part proximately causing plaintiff's injuries and damages. We recognize the thrust of the summary judgment rule in such cases [see, e. g., *Guidry v. Neches Butane Products Company*, 476 S.W.2d 666, 668 (Tex.1972)], but such rules are inapplicable to the case which we review. The *only* question is one of law—governmental immunity of the City and that is controlled by *Wren*.

The question of negligence of the City is not pertinent to the cause for, under the doctrine of governmental immunity, we do not reach the question of factual liability of the City.

Point four is overruled and the judgment of the trial court is in all things affirmed.

4. "Under Other Operation. Except as may be limited by the terms and conditions of any grant, loan, or agreement pursuant to Section 12 of this Act, a municipality may by contract, lease or other arrangement, upon a consideration fixed by it, grant to any qualified person for a term not to exceed forty (40) years the privilege of operating, as agent of the municipality or otherwise, any airport owned or controlled by the municipality."

Section 12 mentioned in the quotation above relates to acceptance of federal and state aid and has no applicability to our case.