Manuel BARRERA, et ux, Helen Barrera, Appellants,

v.

CITY OF GARLAND, Appellee.

No. 05–88–01513–CV.

Court of Appeals of Texas, Dallas.

July 31, 1989.

Rehearing Denied Sept. 22, 1989.

Lawrence L. Mealer, Dallas, for appellants.

Sidney H. Davis, Jr., Dallas, for appellee.

Before ENOCH, C.J., and WILLIAMS [1] and STEPHENS [2], JJ.

CLAUDE WILLIAMS, Justice (Assigned).

The sole issue before this court is whether the trial court properly applied the doctrine of municipal immunity from tort liability. This Court holds that a question of fact was raised at the trial level as to whether the city was negligent in its performance of a proprietary function. For this reason the parties are entitled to a trial on the merits to determine whether a hazard existed adjacent to the street and whether the city was negligent in the performance of its proprietary functions by not protecting the users of the street from that hazard.

The Barreras' son died in an accident when a car in which he was riding went off the road at a curve on Duck Creek Road in Garland, Texas. The Barreras contend that this accident could have been avoided if the city had taken measures to protect users of the road. Specifically, the Barreras allege that the city was negligent in the performance of its proprietary function by failing to (1) post a lower speed limit, as the speed limit allowed on the curve was in excess of a safe speed limit; (2) install approach guardrails even though approach guardrail attachment holes were provided in the bridge construction; (3) take precautions against the adjacent embankment leading to the creek which constituted a hazard of recognizable danger to an ordinary user of the road; and (4) recognize that implementation of an approach guardrail would have protected the ordinary user of the road from the adjacent hazard. The City of Garland countered that these decisions were within the city's governmental function and the city is therefore immune from judicial review. The trial court granted summary judgment to the city based upon the doctrine of governmental immunity. The Barreras, in one point of error, urge that the trial court erred in granting summary judgment because a question of fact exists as to whether or not the City of Garland was negligent in the performance of the proprietary duty of maintaining its streets in a safe condition.

 The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real

1. The Honorable Claude Williams, Chief Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

issue of a fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). When a movant for summary judgment relies on an affirmative defense, he must expressly present and conclusively prove all essential elements of that defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Summary judgment may be based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity. *Shives v. State*, 743 S.W.2d 714, 715 (Tex.App.—El Paso 1987, writ denied). To determine if the city's defense of governmental immunity is sufficient to obtain summary judgment, it must be determined that its conduct fell within the type which courts have historically categorized as a governmental function.

## GOVERNMENTAL & PROPRIETARY FUNCTIONS

The Texas Supreme Court has defined the governmental and proprietary functions of a municipality in the following way.

> When the municipal corporation is acting in a purely public character "forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence ... of its officers.... In so far, however, as they exercise powers not of this character, voluntarily assumed-powers intended for the private advantage and benefit of the locality and its inhabitants, there seems no sufficient reason why they should be relieved from that liability to suit ... to which an individual or private corporation ... would be liable.

*City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753, 755 n. 3 (Tex.1960); *City of Galveston v. Posnainsky*, 62 Tex. 118 (1884).

Courts have found three general categories of fact situations which are accorded status as governmental or proprietary functions. First, if the situation involves one of traffic regulation then the city is afforded immunity from suit. For example, the maintenance and operation of an electric traffic control signal is a governmental function because it is an incident to policing activities. *City of Austin v. Daniels*, 335 S.W.2d at 756; *Parson v. Texas City*, 259 S.W.2d 333, 334 (Tex.Civ. App.—Fort Worth 1953, writ ref'd). Second, if the situation is one which involves a defect in the street the city has no immunity from suit. It is settled that the maintenance of streets, including the duty to warn of a defect in the streets, is a proprietary function of a city. *Turvey v. City of Houston*, 602 S.W.2d 517, 518 (Tex.1980). The city is under a duty to maintain streets in a reasonably safe condition. *City of Austin v. Daniels*, 335 S.W.2d at 757. Maintaining streets in a safe condition is a proprietary function and a city is liable for its negligence in the performance of this function. *Jezek v. City of Midland*, 605 S.W.2d 544, 546 (Tex.1980). Third, cities are charged with a duty to protect motorists from dangers incident to the normal use of the roadway. An early Texas court stated:

> In this connection we further hold that the municipal duty is not confined absolutely to keeping the street, or the traveled or improved portion thereof, in proper condition, and one injured by a defect or obstruction outside the street, or traveled or improved portion thereof, may still be entitled to recover if such defect or obstruction by reason of its proximity to the street, or traveled or improved portion thereof, renders it not improbable that such defect will result in injury to those using the street or traveled or improved portion thereof in the ordinary manner and while exercising due care.

*City of Waco v. Darnell*, 35 S.W.2d 134, 135 (Tex.Comm'n App.1931, opinion adopted). It is in this third category that the case at bar falls. This area is the most troubling to determine to what extent the city owes a duty to the motorists. An examination of the relevant case law is required.

■ It is clear that cities must protect motorists from culverts and ditches which present a danger to the user of the road. The Supreme Court held the City of Fort Worth liable for not protecting a bicyclist from a railroad culvert some 55 feet from the end of the road. *See City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954 (1945). When a city fails to erect a barricade to protect motorists from ditches at the end of the road the city is held liable for negligently failing to perform a proprietary function. *City of Pasadena v. Freeman*, 731 S.W.2d 590 (Tex.App.—Houston [14th Dist] 1987, no writ) (motorist drove into unprotected drainage ditch at end of dead end street).

This duty to warn or protect is not limited to the traveled portion of the road. The Supreme Court established the "close proximity rule" in *City of Houston v. George*, 479 S.W.2d 257 (Tex.1972). The basis of liability was the necessity to protect the user of the road from conditions which present a recognizable danger to the normal user. *See id.* The Court relied on this rule to find the City of Midland liable in *Jezek*, in 1980, for not eliminating brush which caused a visual obstruction at an intersection. *See Jezek v. City of Midland*, 605 S.W.2d 544 (Tex.1980).

## APPROACH GUARDRAILS

■ The city asks us to agree that erecting approach guardrails falls within its police power as a regulation of traffic. We cannot agree with this position. It is logically insupportable and it contradicts what this Court understands as the rationale on which the privilege of immunity is based. Road construction or improvement by a city does not arise out of its police power to control and regulate traffic. *City of Austin v. Schmedes*, 154 Tex. 416, 279 S.W.2d 326, 330 (1955). "The duty to maintain the reasonable safety of the streets would impose the obligation" to use reasonable means to guard against the hazard. *City of Austin v. Daniels*, 335 S.W.2d 753, 757 (Tex.1960), *quoting Kling v. City of Austin*, 62 S.W.2d 689, 690 (Tex.Civ.App. 1933). In considering when a city may be held liable for dangers in close proximity to

the street the Texas Supreme Court in *Jezek* examined the Houston court's holding in *City of Houston v. Jean*, 517 S.W.2d 596 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

> The plaintiff was injured when the car she was driving ran into a ditch which ran parallel with a cross street she was entering. The street was dimly lit and there was no barrier or warning sign to alert a driver to the danger of the ditch. The court held the city liable as the ditch was in such close proximity to the street as to render travel unsafe.

*Jezek v. City of Midland*, 605 S.W.2d 544, 547 (Tex.1980).

■ Since 1945 the Supreme Court has charged cities with the duty to protect against hazards which could foreseeably result in injury to those using the street in an ordinary manner. *See City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954 (1945). The city would have us disregard the *Lee* case because it predated the proprietary/governmental distinction in the Tort Claims Act and there is no indication that the city attempted to obtain governmental immunity. We are not persuaded that this is determinative of the outcome of that case. Our research indicates that the governmental/proprietary distinction was used as early as 1884. *City of Galveston v. Posnainsky*, 62 Tex. 118 (1884). Since there was clear precedent available, the City of Fort Worth could have argued it was protected by the doctrine of governmental immunity against any liability arising from its failure to erect a barrier to protect users of the road from a culvert adjacent to the road. It obfuscates the issue to contend that the ruling in *Lee* predated the proprietary/governmental distinction of the Torts Claims Act. In 1972, the Supreme Court reiterated its rule from *Lee* in a case where the municipality argued governmental function immunity. *City of Houston v. George*, 479 S.W.2d 257 (Tex.1972). The Court stated, "[t]he basis of liability [in *Lee*] was the rule that requires a municipality to protect the *user of a roadway* from a condition beyond the road itself but which presents a recogniz-

able danger to the normal *user of the road."* *Id.* citing Prosser, *Law of Torts,* 352 n. 19 (4th ed. 1971) (emphasis in original). Nowhere in the Court's holding did it even suggest that *Lee* was inapplicable because the city never argued governmental immunity in *Lee* and it was arguing it in *George.* This rationale is important to understand because it precludes the applicable Tort Claims Act as having any bearing on the resolution of these issues. The Texas Tort Claims Act, which became effective on January 1, 1970, expressly waives governmental immunity for all governmental units to the extent of the liability expressed in the Act. "Included among these exclusions is section 18(a) which preserved the claimant's common law remedy to seek unlimited damages for the negligent acts of a municipality while engaged in a proprietary function." *Turvey v. Houston,* 602 S.W.2d 517, 519 (Tex.1980). Nothing in the Tort Claims Act changes the city's common law duty to maintain safe streets or the fact that street maintenance is a proprietary function. *City of Pasadena v. Freeman,* 731 S.W.2d 590, 594 (Tex.App.—Houston [14th Dist] 1987, no writ). The Tort Claims Act in force in 1986 did not apply to a proprietary function of a municipality. TEX.PRAC. & REM.CODE ANN. art. 101.-058 (Vernon 1986).[3]

The Texas Supreme Court has previously found a duty on a municipality to protect users of the streets from conditions contiguous to the street which may pose a hazard to one using the street in an ordinary manner. *City of Fort Worth v. Lee,* 143 Tex. 551, 186 S.W.2d 954 (1945). To establish this liability the Court relied on section 368 of the Restatement of Torts. RESTATEMENT (Second) OF TORTS § 368 (1965). *Lee* holds that where a highway is established near existing excavation or other dangerous condition, the duty to guard it is on those charged with maintaining the highway in a safe condition. *City of Fort Worth v. Lee,* 186 S.W.2d at 956. As recently as 1986 the Beaumont Court of Appeals relied on section 368 of the Restatement of Torts to reverse a summary judg-

ment. *Hamric v. Kansas City Southern Railway Co.,* 718 S.W.2d 916, 920 (Tex. App.—Beaumont 1986, no writ) (trial on the merits was necessary to determine whether the highway department and/or railway and telephone companies were responsible for mowing weeds). That court found that this section included a duty of possessors of land abutting the road to protect motorists from conditions consequent to their activities which may impede the view of the road. *Id.* at 918–20.

▮ In the instant case the proper law to apply is section 368 of the Restatement of Torts. Comment c of this section reveals that the responsibility is on the entity charged with the duty to maintain the streets in a safe condition if the street is contiguous to a dangerous artificial condition. RESTATEMENT (Second) OF TORTS § 368 (1965). Therefore a material question of fact is presented regarding whether or not the conditions contiguous to Duck Creek Road were natural or artificially created.

▮ The city further contends that this Court has ruled that guardrails are not statutorily defined as maintenance when construing the nondiscretionary duty of the highway department to maintain the highways. *Stanford v. State Dep't of Highways & Pub. Transp.,* 635 S.W.2d 581 (Tex. App.—Dallas 1982, writ ref'd nre). This case is readily distinguishable. In *Stanford,* this Court was construing the meaning of a statutory term. In the instant case, we must apply case law to determine a city's duty to maintain safe streets. We do not consider guardrails to be "maintenance" of the street. Since the city is charged with the duty to maintain safe streets and since the Texas Supreme Court has held cities liable for not protecting against adjacent hazards, the question of whether approach guardrails could have protected the users of Duck Creek Road from plunging into the adjacent creekbed is a fact question to be determined by a trial court.

3. The parties stipulate that the Texas Tort Claims Act does not apply in this case.

## WARNING SIGNS

■ The city also contends that the Court should find the decision regarding lack of warning signs one which the city may make without judicial review. To affirm this position, the Court must be persuaded that a warning sign is within the city's governmental function. This determination is based on the different rationales which support the immunity or responsibility of the city. To ascertain whether a warning sign is within the ambit of the city's police power to regulate traffic or its responsibility to protect motorists from hazards, the court must look to the function of the sign.

■ The Houston Court of Appeals dealt with a similar problem in *City of Pasadena v. Freeman*, 731 S.W.2d 590 (Tex.App.—Houston [14th Dist] 1987, no writ). That case stemmed from a car driven into a drainage ditch at the end of the street. The question was whether the city was liable for not erecting a barricade to prevent that event. That court held:

> Courts have held that maintaining traffic signals, posting the correct speed limit, keeping stop signs unobscured by tree limbs, and regulating parking on a narrow street are all governmental functions in that they involve traffic regulation. A barricade, on the other hand, is a warning sign meant to instruct a driver about a dangerous condition in or near the street. Under the facts in this case, we consider the barricade a warning sign necessitated by the city's mandatory duty to perform a proprietary function of maintaining safe streets.

*Id.* at 593–94. We hold that when the function of the sign is not for regulating traffic but to warn of a hazard, the city cannot claim immunity under the guise of its police power to regulate traffic. Because of this we cannot agree that the city should obtain summary judgment. A material question of fact was presented as to whether or not there was a need for a sign to protect the user of the street from an adjacent hazard.

## CONCLUSION

■ The city argues that the allegations of negligence, for which the city is charged, are all within its governmental function and therefore the city should obtain summary judgment as a consequence of its complete affirmative defense. This Court agrees with the city's contention that the decision regarding the speed limit at which vehicles may negotiate the street is completely within the city's police power regarding regulation of traffic. *City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753, 757 (1960) (regulation of traffic is a governmental function.) The city, of course, enjoys immunity for its discretion regarding at what speed it will allow motorists to negotiate the street. This Court agrees that this decision is within the city's governmental function. On this point the trial court properly rendered summary judgment.

■ However, the facts of this case present a question of whether or not the city breached its duty of maintaining streets in a safe condition by not placing a warning sign or protective devices in an area contiguous to a hazard. The city becomes charged with the duty to maintain streets in a reasonably safe condition when it takes over an addition. *Jezek v. City of Midland*, 605 S.W.2d 544, 547 (Tex.1980).

"This doctrine of immunity has been often criticized and questioned, and the present tendency of the courts is to restrict this doctrine of non-liability and construe it strictly against the city." *City of Houston v. Schilling*, 150 Tex. 387, 240 S.W.2d 1010, 1012 (1951). "To a very large extent the question of whether a city is acting in a purely governmental capacity or a purely proprietary capacity can only be settled by the facts of each particular case." *Pontarelli Trust v. City of McAllen*, 465 S.W.2d 804, 807 (Tex.App.—Corpus Christi 1971, no writ).

■ This Court finds that a question of material fact exists, as to whether the conditions adjacent to the road were in such proximity to the road, as to pose a hazard to the normal user of the road. For that reason the case must be remanded for a

trier of fact to make the following determinations: 1) the trier of fact must determine whether a dangerous artificial condition existed in such proximity to the road that it was foreseeable that it presented a danger to an ordinary user of the road; 2) if such a hazard existed it must then determine if the city was negligent in not erecting devices to protect and/or signs to warn of this hazard. The judgment of the trial court is reversed in part and this cause is remanded in part for a trial on the merits, in accordance with this opinion.