TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00030-CV







David Winsman, Appellant



v.



City of Austin, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY 
NO. 216,901, HONORABLE STEVE RUSSELL, JUDGE PRESIDING






PER CURIAM


 Appellant David Winsman sued appellee City of Austin for property damage
sustained when a sewer pipe operated and maintained by the City collapsed and raw sewage
flowed into his home. The trial court granted summary judgment in favor of the City, and
Winsman appeals. We will reverse in part and affirm in part the trial court's judgment.



Standard of Review


 In reviewing a summary judgment record, this Court observes the following rules: 
(1) the movant for summary judgment has the burden of showing that there is no genuine issue
of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a
disputed material fact precludes summary judgment, evidence favorable to the non-movant will
be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985).



Negligence



 By point of error one, Winsman asserts that the trial court erred in granting the
City's motion for summary judgment on the issue of negligence. A municipality is immune from
liability for its negligence in performing governmental acts except to the extent provided by the
Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 1986 &
Supp. 1995); Duhart v. State, 610 S.W.2d 740, 741 (Tex. 1980); City of Houston v. George, 479
S.W.2d 257, 258-59 (Tex. 1972). The operation and maintenance of a sanitary sewage system
by a city is a governmental function for which liability may be imposed, provided that the specific
requirements of section 101.021 of the Texas Tort Claims Act are met. See Tex. Civ. Prac. &
Rem. Code § 101.0215(a)(9), (32) (West Supp. 1995); Shade v. City of Dallas, 819 S.W.2d 578,
581 (Tex. App.--Dallas 1991, no writ). Section 101.021 provides that a governmental unit is
responsible for:



(1) property damage, personal injury, and death proximately caused by the
wrongful act or omission or the negligence of an employee acting within the
scope of employment if:


 (A) the property damage, personal injury, or death arises from the
operation or use of a motor-driven vehicle or motor-driven equipment,
and


 (B) the employee would be personally liable to the claimant according to
Texas law . . . .



Tex. Civ. Prac. & Rem. Code § 101.021 (West 1986) (emphasis added).


 Winsman claimed in his response to the motion for summary judgment that the City
is liable for the property damage he sustained because the operation and maintenance of the
sewage line involves motor-driven vehicles and equipment. The motor-driven vehicles and
equipment involved includes (1) a pump that lifts sewage to a lift station, (2) motor-driven blowers
that suck gases such as hydrogen sulfide out of a manhole before utility employees enter, and (3)
motorized trucks that carry cameras which televise the interior of the sewer lines. (1)

 The City, citing State Department of Highways v. Payne, 838 S.W.2d 235 (Tex.
1992), asserts that the decision whether particular equipment is motor-driven equipment
contemplated by the statute is a question of law rather than fact. Id. at 238 (whether special defect
exists is question of law). We agree. 

 Section 101.021 broadly waives liability for property damage caused by the
operation or use of motor-driven equipment. Section 101.001(3) defines "motor-driven
equipment" by exclusion:


Motor-driven equipment does not include:


(A) equipment used in connection with the operation of floodgates or water
release equipment by river authorities created under the laws of this state; or


(B) medical equipment, such as iron lungs, located in hospitals.



Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3) (West 1986). As noted by the court in 4 DG's
Corp. v. City of Lockney, 853 S.W.2d 855, 856 (Tex. App.--Amarillo 1993, no writ), the term
"equipment" includes "the implements (as machine or tools) used in an operation or activity." Id.
at 857; Webster's Third New International Dictionary 768 (Philip B. Gove, ed., 1986). The
pump, blower, and truck fit within the ordinary definition of "equipment."

 We also believe that, by expressly excluding equipment used in connection with the
operation of floodgates or water release and medical equipment, the legislature impliedly included
similar types of motor-driven equipment. State v. Richards, 301 S.W.2d 597, 600 (Tex. 1957)
(specific exceptions make plain legislature's intent that statute should apply in all cases not
excepted). We hold that, as a matter of law, the term "motor-driven" equipment as used in
section 101.021 could include the sewage pump, the blower, and the truck. (2)

 On appeal, Winsman argues that although the City's summary judgment evidence
established that the pipes collapsed because they had deteriorated due to the presence of hydrogen
sulfide gas in the sewer, the City failed to show that the presence of hydrogen sulfide gas was not
attributable to the motor-driven vehicles or equipment used in operating and maintaining the lines. 
We agree. The City's summary judgment evidence showed that hydrogen sulfide is "usually"
caused by some type of septic sewage that corrodes the concrete pipe. The testimony of an
interested witness or an expert offered to support a summary judgment may be relied upon only
if the evidence is clear, positive and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c); Casso v.
Brand, 776 S.W.2d 551, 558 (Tex. 1989). The testimony that hydrogen sulfide is "usually"
caused by septic sewage is not clear, positive and direct: it leaves open the possibility that
hydrogen sulfide may be otherwise created, and does not negate Winsman's assertion that the
buildup of gas may have been exacerbated by the use of the pump, the blower, or the truck. At
no point did the City attempt to negate Winsman's assertion that motor-driven equipment was
involved in the accident. 

 We do not address Winsman's other arguments under this point of error because
we conclude that the evidence does not prove that the operation or use of motor-driven vehicles
or equipment did not cause the pipe to break. (3) We sustain point of error one.



Nuisance 


 By point of error two, Winsman asserts that the trial court erred in granting the
City's motion for summary judgment on the issue of nuisance. Nuisance is an action that looks
at the damage or harm inflicted rather than the particular type of act or omission. (4) A nuisance is
a "condition which substantially interferes with the use and enjoyment of land by causing
unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and
enjoy it." Bible Baptist Church v. City of Cleburne, 848 S.W.2d 826, 829 (Tex. App.--Waco
1993, writ denied); Neyland v. Schneider, 615 S.W.2d 285, 286 (Tex. Civ. App.--Eastland 1981,
no writ); Meat Producers, Inc. v. McFarland, 476 S.W.2d 406, 410 (Tex. Civ. App.--Dallas 1972,
writ ref'd n.r.e.).

 Governmental immunity does not shield municipalities from liability arising from
the creation or maintenance of a nuisance. Gotcher v. City of Farmersville, 151 S.W.2d 565, 566
(Tex. 1941); Bible Baptist Church, 848 S.W.2d at 829; Shade v. City of Dallas, 819 S.W.2d 578,
581 (Tex. App.--Dallas 1991, no writ); City of Texarkana v. Taylor, 490 S.W.2d 191, 194 (Tex.
Civ. App.--Texarkana 1972, writ ref'd n.r.e.). A municipal corporation has no more right to
create or maintain a nuisance than does a private person. Stein v. Highland Park Indep. Sch.
Dist., 540 S.W.2d 551, 553 (Tex. Civ. App.--Texarkana 1976, writ ref'd n.r.e.). To constitute
a nuisance coming within the exception, however, the condition must in some way constitute an
unlawful invasion of the property or the rights of others. Gotcher, 151 S.W.2d at 566; Shade,
819 S.W.2d at 581. And, since a municipality is immune from negligence except to the extent
provided by the Tort Claims Act, invasion of those rights must be inherent in the thing or
condition itself, beyond that arising merely from its negligent or improper use. Parson v. Texas
City, 259 S.W.2d 333, 335 (Tex. Civ. App.--Fort Worth 1953, writ ref'd); City of Texarkana v.
Taylor, 490 S.W.2d 191, 194 (Tex. Civ. App.--Texarkana 1972, writ ref'd n.r.e.); Jones v. City
of Dallas, 451 S.W.2d at 274; Steele v. City of El Paso, 417 S.W.2d 923, 924 (Tex. Civ. App.--
El Paso 1967, writ ref'd n.r.e.). One cannot convert a cause of action for negligence into an
action for nuisance simply by so pleading. Steele, 417 S.W.2d at 924. The test is whether the
damage would have occurred in the absence of any negligence. See, e.g., Schneider v. City of
Cuero, 749 S.W.2d 614, 618 (Tex. App.--Corpus Christi 1988, writ denied).

 In this case, the City's summary judgment evidence showed that the line collapsed
because it had been corroded by hydrogen sulfide gas. Winsman complains that because the
evidence showed that hydrogen sulfide gas was "usually" produced by sewage, a question of fact
exists about whether the problem was caused by the City's negligence or by a condition inherent
in the sewer system itself. See Bible Baptist Church, 848 S.W.2d at 830 (reversing summary
judgment in favor of city because fact issues existed regarding whether condition of sewage line
rose to level of nuisance); Shade, 819 S.W.2d 581 (reversing summary judgment because it was
unclear whether sewage backup was caused by problem inherent with line or negligence in
installation). 

 However, although sewer lines ordinarily contain corrosive hydrogen sulfide gas,
sewer lines do not ordinarily collapse. The City's summary judgment evidence showed that only
one other line had collapsed due to hydrogen sulfide corrosion in the nine years prior. Further,
the evidence showed that while most mains are designed to last for forty to fifty years, this line
collapsed after only ten. Finally, the City implements a program to detect corrosion to prevent
such breaks. We conclude that the damage would not have occurred in the absence of negligence. 
If the City is responsible at all for the line's collapse after the completion of only twenty to
twenty-five percent of its anticipated useful life, the City must have been negligent in approving
or maintaining the line. (5) We hold that on these facts, the only cause of action presented is one
for negligence. See Rowe v. City of Temple, 510 S.W.2d 173, 174-5 (Tex. Civ. App.--Beaumont
1974, no writ) (instructed verdict on nuisance claim proper when theory was that city employee
had negligently disconnected him from city's sewer line); Steele v. City of El Paso, 417 S.W.2d
923, 924 (Tex. Civ. App.--El Paso 1967, writ ref'd n.r.e.) (directed verdict proper when inherent
danger causing sewage backups not adequately pleaded or proven); Jones v. City of Dallas, 451
S.W.2d at 274 (summary judgment appropriate when no inherent danger or defect existed);
compare City of Uvalde v. Crow, 713 S.W.2d 154, 157 (Tex. App.--Texarkana 1986, writ ref'd
n.r.e.) (city liable for nuisance when evidence showed that it discharged polluted effluent in
normal weather and under normal operating conditions). Point of error two is overruled. 

 We reverse the trial-court judgment with regard to the negligence cause of action,
and remand that portion of the cause to the trial court for proceedings consistent with this opinion. 
The remainder of the trial-court judgment is affirmed.


Before Justices Powers, Kidd and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: October 11, 1995

Do Not Publish

1.   Although the evidence conflicts, it appears that the motor involved is the winch
motor that pulls the television camera through the line's interior. To the extent that it is
not, the truck is clearly a motor-driven vehicle under section 101.021.
2.   We decline to follow the court in Schaefer v. City of San Antonio, 838 S.W.2d 688
(Tex. App.--San Antonio 1992, no writ), which, in dicta, stated that a water pump was not
motor-driven equipment under the statute. Id. at 693.
3.   The city asserts that Callaway v. City of Odessa, 602 S.W.2d 330 (Tex. Civ. App.--El
Paso 1980, no writ), is dispositive of this case. In Callaway, as in this case, homeowners
sued for damages resulting from the backup and overflow of sewage into their home. While
Callaway does stand for the proposition that a city is not liable for negligence unless liability is
waived, the plaintiffs in Callaway did not allege that the negligence involved motor-driven
equipment or vehicles. Once that allegation was made, it became the City's responsibility to
rebut it with proper summary judgment evidence. 4 DG's Corp. v. City of Lockney, 853
S.W.2d 855, 856 (Tex. App.--Amarillo 1993, no writ).
4.   See City of Texarkana v. Taylor, 490 S.W.2d 191 (Tex. Civ. App.--Texarkana 1973, writ
ref'd n.r.e.), for a discussion of the vagaries of the theory behind a cause of action for
nuisance. 
5.   The line was manufactured, selected, and installed by other entities.


e the
evidence showed that hydrogen sulfide gas was "usually" produced by sewage, a question of fact
exists about whether the problem was caused by the City's negligence or by a condition inherent
in the sewer system itself. See Bible Baptist Church, 848 S.W.2d at 830 (reversing summary
judgment in favor of city because fact issues existed regarding whether condition of sewage line
rose to level of nuisance); Shade, 819 S.W.2d 581 (reversing summary judgment because it was
unclear whether sewage backup was caused by problem inherent with line or negligence in
installation). 

 However, although sewer lines ordinarily contain corrosive hydrogen sulfide gas,
sewer lines do not ordinarily collapse. The City's summary judgment evidence showed that only
one other line had collapsed due to hydrogen sulfide corrosion in the nine years prior. Further,
the evidence showed that while most mains are designed to last for forty to fifty years, this line
collapsed after only ten. Finally, the City implements a program to detect corrosion to prevent
such breaks. We conclude that the damage would not have occurred in the absence of negligence. 
If the City is responsible at all for the line's collapse after the completion of only twenty to
twenty-five percent of its anticipated useful life, the City must have been negligent in approving
or maintaining the line. (5) We hold that on these facts, the only cause of action presented is one
for negligence. See Rowe v. City of Temple, 510 S.W.2d 173, 174-5 (Tex. Civ. App.--Beaumont
1974, no writ) (instructed verdict on nuisance claim proper when theory was that city employee
had negligently disconnected him from city's sewer line); Steele v. City of El Paso, 417 S.W.2d
923, 924 (Tex. Civ. App.--El Paso 1967, writ ref'd n.r.e.) (directed verdict proper when inhere